**WARRENDER v. GULL HARBOR YACHT CLUB, INC.**

[228 N.C. App. 520 (2013)]

JOHN W. WARRENDER, ET. AL., PLAINTIFFS
v.
GULL HARBOR YACHT CLUB, INC., ET. AL., DEFENDANTS

BRAXTON BROOKS, ET. AL., PLAINTIFFS
v.
GULL HARBOR YACHT CLUB, INC., ET. AL., DEFENDANTS

No. COA12-1038

Filed 6 August 2013

**1. Deeds—restrictive covenants—marina**

The trial court properly concluded that a marina (GHYC) was subject to restrictive covenants. The fact that the GHYA parcel was conveyed many years after the residential parcels did not alter the fact that the marina was included as part of the recorded map of that portion of the covenants specifically governing the use of the marina by lot owners.

**2. Deeds—restrictive covenants—boat slips**

A marina (GHYC) did not violate restrictive covenants by entering into 99 year leases for boat slips with non-property owners even though the marina was restricted to the owners of lots in the subdivision. There was an exception when lot owners did not take advantage of their rights to boat slips and, while the leases did not include language allowing the non-property owners to be displaced when property owners wanted a slip and none were available, there was no instance of that scenario having occurred. The mere length of the leases did not transform them into sales.

**3. Deeds—restrictive covenants—marina user fee**

There was no genuine issue of material fact that a marina (GHYC) violated restrictive covenants when it denied access to lot owners until they paid a $200.00 annual user fee. Permitting GHYC to collect this user fee would defeat the purpose of a provision in the restrictions explicitly limiting the maximum amount of maintenance costs to be contributed by the lot owners.

**4. Damages and Remedies—breach of restrictive covenants—status quo**

The trial court erred in part in the relief granted for breach of restrictive covenants where it was held that there was no underlying breach. Moreover, the relief granted for an improper fee went far beyond simply restoring the *status quo* and was vacated.

WARRENDER v. GULL HARBOR YACHT CLUB, INC.

[228 N.C. App. 520 (2013)]

**5. Contracts—tortious interference—direct breach**

The trial court erred in granting summary judgment to plaintiffs on a tortious interference with contract claim arising from a dispute between a subdivision and a marina where the marina breached the restrictive covenants directly.

**6. Judgments—consent—scope**

A consent judgment arising from a larger restrictive covenants dispute did not adjudicate a claim for riparian rights nor was such a determination necessary to that judgment. The consent judgment involved accessing boat slips without trespassing on the land area of a particular lot.

**7. Pleadings—complaint—issues included**

Despite defendant Gull Harbor Yacht Club's contention that the issue of plaintiff Warrander's riparian rights was not stated in the complaint, it was necessary for the trial court to determine whether plaintiff validly possessed riparian rights in order to fully adjudicate the claim that a marina was trespassing.

**8. Pleadings—after joinder—not required—united in interest with other plaintiffs**

The trial court properly considered the Youngs' riparian rights claim when the trial court granted the Youngs' motion to join as plaintiffs in an action concerning a development and a marina. In granting the motion, the trial court necessarily determined that the Youngs were united in interest with the other plaintiffs who had already filed claims and there was no authority requiring the Youngs to file a separate pleading after joinder.

**9. Waters and Adjoining Lands—riparian rights—owner of bulkhead—issue of fact**

A grant of summary judgment to an individual defendant on a riparian rights claim involving a subdivision, a marina, and restrictive covenants was reversed where there was a genuine issue of fact as to the ownership of a bulkhead adjacent to certain lots in the subdivision.

**10. Statutes of Limitation and Repose—restrictive covenants—contractual in nature**

The trial court properly granted summary judgment in favor of a homeowner's association (GHHA) as to a marina's (GHYC's) counterclaims based on the statute of limitations. Restrictive covenants are contractual in nature and the statute of limitations for a breach

of contract claim is three years. The undisputed evidence was that both parties ceased to perform their duties under the restrictive covenants outside of that limitation.

**11. Parties—necessary—property owners not yet joined as plaintiffs—standing of defendants to object**

In an action arising from a dispute between a homeowner's association and a marina, the individual defendants could not properly challenge a partial summary judgment based on an assertion that necessary plaintiffs had not yet been joined when the summary judgment was granted. The missing parties were lot owners who became plaintiffs, the property rights of the lot owners were enforced rather than extinguished, and an opposing party which sought to impair the lot owner's rights did not have standing to argue that they were not joined when required.

**12. Associations—restricted access to marina—individual defendants—ownership interest in marina not present**

The trial court erred by granting summary judgment to plaintiffs on their violation of restrictive covenants claim against the individual defendants in an action arising from a dispute between a development and a marina. The individual defendants did not possess the necessary ownership interest in the marina which would provide the authority to restrict access.

**13. Contracts—tortious interference—restrictive covenants—defendants not third parties inducing breach**

The trial court erred by granting summary judgment in favor of plaintiffs on a claim against the individual defendants for tortious interference arising from a dispute between a subdivision and a marina. It was previously determined that the marina directly breached the restrictive covenants and that any actions by the individual defendants which could be considered a breach of those covenants were undertaken in their role as members of the marina. They cannot be considered third parties that induced the marina to breach the covenants.

**14. Attorney Fees—reversal of underlying determination—reversal of award necessitated**

The reversal of a determination that the individual defendants violated restrictive covenants also necessitated the reversal of attorney fees awarded to plaintiffs.

## WARRENDER v. GULL HARBOR YACHT CLUB, INC.

[228 N.C. App. 520 (2013)]

Appeal by defendants from order entered 12 March 2010 by Judge W. Allen Cobb, Jr., orders entered 31 October 2011 and 15 November 2011, and orders and judgments entered 31 October 2011 and 15 and 16 November 2011 by Judge Arnold O. Jones, II in Carteret County Superior Court. Heard in the Court of Appeals 9 January 2013.

*Emanuel & Dunn, PLLC, by Charles J. Cushman, for plaintiff-appellees John Warrender, Braxton Brooks, Marion Brooks, Bob Alberti, Grace Bodenstedt, Vernon Jones, Annette Jones, Chris Knight, Heather Knight, Harry Murphy, Martha Murphy, Fred Myers, Linda Myers, Walter Phillips, Pam Phillips, Wallace Shook, Nora Shook, Stanley Warlen, and Judy Warlen.*

*Chesnutt, Clemmons & Peacock, P.A., by Gary H. Clemmons, for plaintiff-appellees Gull Harbor Homeowners Association, Inc., Elizabeth Sims, Carl D. Wheeler, Jeffrey B. Schmucker, Ann M. Schmucker, Donald Kirby, Lee Kirby, Barbara J. Erickson, Ralph E. Willard, Martha S. Willard, Allen Causey, Debra Causey, Faye S. Brewer, Al Wagner, Doris V. Wagner, John Bolt, Jo Anne Bolt, Laurie Brown, Thomas Kriehn, Elizabeth Kriehn, Gordon J. Slaughter, F. Darline Brady, Dorothy Dorsett, Jennifer A. Ulz, Patricia S. Foster, Karen Z. McGuiness, James R. McGuiness, Jr., Shara C. Livingston, William H. Livingston, Walter Tesch, Betty Tesch, Benton Paschall, Joan Paschall, Michael P. Soucie, Jennifer Soucie, Brian Huckle, Mary Huckle, Ronald R. Spivey, Albert Fleming, Nancy Fleming, Kenneth Ghelli, Janice Moore, Jamie Pitts, Yvonne Pitts, Bruno Retecki, and Joanne Retecki.*

*Ennis, Baynard and Morton, by Ron Medlin, Jr., for plaintiff-appellee Gull Harbor Homeowners Association, Inc.*

*Howard, Stallings, From & Hutson, P.A., by Richard P. Leissner, Jr., for plaintiff-appellees Wayne and Barbara Young.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Charles E. Coble, for defendant-appellant Gull Harbor Yacht Club, Inc.*

*Phillip H. Hayes, for defendant-appellants Graham Braswell, Hugh Etheridge, Ken Etheridge, Billy Ray McLeod, William Moller, John Painter, Scott Rice, William Roche, Peter Schirm, Harry Schoenagel, Lee Shreve, Brad Sutton, William Wallin, Richard Willenbrock, Phil Nelson, and Amy Nelson.*

CALABRIA, Judge.

Defendants appeal from multiple orders and judgments entered by the trial court in favor of plaintiffs on claims involving the restrictive covenants governing the Gull Harbor subdivision ("Gull Harbor"). We affirm in part, reverse in part, vacate in part, and remand.

## I. Factual and Procedural Background

On 11 April 1972, developer Walton W. Smith ("Smith") acquired a large tract of land in Carteret County, North Carolina, intending to develop it into Gull Harbor. Gull Harbor included a marina ("the marina"), which was created by digging a basin and a channel from a portion of the land in Gull Harbor to Bogue Sound. Smith subdivided the remainder of Gull Harbor into lots for single-family homes.

On 19 December 1972, Smith recorded a "General Plan" for Gull Harbor ("the General Plan"), which included several restrictive covenants. The General Plan applied to "[t]hat area described as Blocks A, B, C, of Section 1, of Gull Harbor as shown on the map described above in Map Book 9, at Page 28." Under the terms of the General Plan, all residents of Gull Harbor were required to join a homeowners association, which was "responsible for the maintenance of the marina, the channel from the marina to deep water, and all streets unless or until the maintenance of said streets is assumed by a state or municipal governmental agency." Each property owner was required to pay the homeowners association $36.00 per year to fund this maintenance. On 10 August 1974, the "Gull Harbor Home-Owner's Association, Inc." ("GHHA") filed Articles of Incorporation with the North Carolina Secretary of State and began operating as the homeowners association for Gull Harbor.

The General Plan also provided that "[t]he yacht basin and boat ramp shall be for the exclusive use of Gull Harbor lot owners and their house guests[.]" However, Smith, as developer of Gull Harbor, specifically reserved the right to rent boat slips in the marina to other individuals "unless or until said slips are needed by Gull Harbor lot owners who will then be given preference on a first come first serve basis." The General Plan was valid "until January 1, 1998, after which time said covenants shall be automatically extended for successive periods of ten years unless a majority of the then owners of the land described in the map change said covenants in whole or in part."

In January 1973, Smith conveyed the majority of Gull Harbor to Gull Harbor, Inc. However, Smith retained ownership of the marina,

"together with its appurtenances, launching ramp, docks, bulkheading and channelization." On 25 June 1987, Smith sold the marina to Thomas M. Foley ("Foley") and John Robert Vakiener ("Vakiener"). The deed conveying the marina to Foley and Vakiener also conveyed "all improvements located thereon, including but not limited to bulkheading, docks and finger piers, and electrical and water installations." The deed specifically was made subject to the "[r]ights of owners in lots in the Gull Harbor Subdivision to use of that portion of the property designated as 'Gull Harbor Marina' as set out in [the] General Plan . . . ."

In 1983, a dispute arose between Smith and Gull Harbor property owners John W. Warrender ("Warrender") and Diane Poole Warrender regarding six boat slips located near Warrender's lot. The dispute was litigated and subsequently settled by consent judgment on 18 May 1984 ("the Smith-Warrender consent judgment"). Specifically, the Smith-Warrender consent judgment ensured that the lessees of those six boat slips were not to trespass upon Warrender's "lawn or land area" and were to respect Warrender's "privacy and property rights." In addition, the use of the slips was to be of such a nature that Warrender would not be "duly or unreasonably disturbed."

On 3 February 1988, a majority of Gull Harbor property owners executed and filed a "Revision and Restatement" of the General Plan ("the Revision"), which amended many of the covenants included in the General Plan. Under the terms of the Revision, the GHHA increased the annual $36.00 per lot assessment to $60.00 per lot, but limited its contributions for maintenance of the marina to $3,000.00 per calendar year. Neither Foley nor Vakiener executed the Revision.

On 3 February 2000, the marina was conveyed to Byron T. Unger ("Unger") and his wife, Anna Monique Kent. The deed to Unger described the marina as including the same improvements referenced in the 25 June 1987 deed to Foley and Vakiener and was explicitly subject to the "[r]ights of owners in the Gull Harbor Subdivision, if any, to use of that portion of the property designated as 'GULL HARBOR MARINA' as set out in [the] General Plan. . . ."

On 27 February 2000, Unger sent a letter to all Gull Harbor residents indicating that he intended to lease boat slips in the marina for 99-year terms. Unger proceeded to enter into 99-year leases for twenty-two of the marina's thirty boat slips. Eight of the leases were with individuals who were not lot owners in Gull Harbor ("the non-owners"). In addition, Unger executed two promissory notes, secured by deeds of trust on the marina, in the amounts of $220,000.00 and $80,000.00. Unger

subsequently defaulted on both promissory notes and foreclosure proceedings were initiated.

On 1 March 2005, the individuals who had entered into 99-year boat slip leases with Unger filed Articles of Incorporation for the non-profit corporation Gull Harbor Yacht Club ("GHYC"). GHYC purchased the two promissory notes and corresponding deeds of trust on the marina for $165,000.00. GHYC then continued with the foreclosure proceedings and ultimately purchased the marina at the ensuing foreclosure sale.

Several portions of the marina had been neglected by Unger and required extensive repairs. These repairs, which totaled $200,012.23, included replacing the boat ramp, dredging the marina basin and channel, and repairing the marina bulkheads. In 2007, GHYC changed the lock that secured the chain across the entrance to the marina and informed all Gull Harbor lot owners that it would begin charging them a "user fee" of $200.00 per year to access the marina boat ramp. In addition, lot owners would be required to pay $20.00 in order to receive a key to the locked chain.

On 13 September 2007, Warrender initiated an action against GHYC in Carteret County Superior Court. On 2 September 2008, Warrender filed an amended complaint against GHYC as well as the individual members of GHYC ("the individual defendants")(collectively "defendants"). The amended complaint included claims for, *inter alia*, violation of restrictive covenants, tortious interference with a contract ("tortious interference"), trespass, nuisance, unfair and deceptive trade practices, and injunctive relief. That same day, eighteen other Gull Harbor property owners (collectively with Warrender, "the original plaintiffs") filed a companion action against GHYC and the individual defendants, asserting similar claims. On 29 October 2008, the two cases were consolidated.

On 2 October 2008, defendant Wayne Young ("Young"), a Gull Harbor property owner who had entered into a 99-year lease with Unger, filed a motion to dismiss the original plaintiffs' complaint as to their claims against him. On 31 October 2009, defendants filed an answer to the original plaintiffs' complaint which raised several affirmative defenses, including the statute of limitations and laches. Additionally, defendants included in their answer a motion to dismiss for failure to join necessary parties. On 18 February 2009, the original plaintiffs voluntarily dismissed their claims against Young without prejudice.

On 6 October 2009, the original plaintiffs moved for partial summary judgment on their claims for violation of restrictive covenants and tortious interference. Defendants filed a cross-motion for summary

judgment on all of the original plaintiffs' claims. After a hearing, the trial court entered an order on 12 March 2010 granting partial summary judgment in favor of the original plaintiffs on their claims for breach of restrictive covenants and tortious interference. The trial court also granted defendants' summary judgment motion as to plaintiffs' unfair and deceptive trade practices claim, but denied defendants' motion as to plaintiffs' remaining claims and defendants' affirmative defenses. Finally, the trial court ordered "[t]hat the Gull Harbor Home Owners Association, Inc., and all current property owners in the Gull Harbor subdivision are hereby joined, *ex mero motu*, as necessary parties to this action."

On 7 February 2011, GHHA and several Gull Harbor lot owners formally moved to be joined as plaintiffs, and the trial court granted this motion on 5 April 2011. On 2 June 2011, four additional property owners moved to be joined as plaintiffs, and the trial court granted this motion on 23 June 2011.[1] On 10 February 2011, Young and his wife, Barbara Young (collectively "the Youngs"), moved to join the case as plaintiffs, and the trial court granted their motion on 17 June 2011. After they joined the instant case, none of the joinder plaintiffs filed a new complaint asserting their own causes of action against defendants.

On 2 February 2011, GHYC filed claims against GHHA and all Gull Harbor lot owners, seeking, *inter alia*, an extinguishment of GHHA's right to access the marina due to GHHA's failure to adequately contribute to the costs of the marina's maintenance. GHYC also filed a motion pursuant to N.C. Gen. Stat. § 1A-1, Rule 60(b) (2011) to set aside the trial court's 5 March 2010 partial summary judgment order.

GHHA and the joinder plaintiffs filed motions for summary judgment as to GHYC's claims on 6 and 8 June 2011. On 1 July 2011, the original plaintiffs filed motions for summary judgment on their remaining claims. On 15 July 2011, the joinder plaintiffs filed a similar summary judgment motion. On 17 August 2011, the Youngs filed a motion for summary judgment seeking a declaration that they possessed riparian rights and that their 99-year lease was valid.

After a hearing on these various motions, the trial court entered an "Amended Order and Judgment" on 15 November 2011, which granted plaintiffs substantially all of the relief they sought. In particular, the trial

---

1. GHHA and the Gull Harbor property owners formally joined by the trial court as plaintiffs on 5 April and 23 June 2011 are represented by the same counsel. These property owners will collectively be referred to as "the joinder plaintiffs." The original plaintiffs, the joinder plaintiffs, the Youngs, and GHHA will be referred to collectively as "plaintiffs."

court denied GHYC's Rule 60(b) motion,[2] granted plaintiffs' motions for summary judgment against all defendants for both plaintiffs' original claims and defendants' claims, and granted plaintiffs declaratory and injunctive relief. The trial court voided the 99-year leases with the non-owners and ejected those lessees from their boat slips, declared that Warrender and the Youngs possessed riparian rights, and ordered GHHA to "exercise dominion and control over the docks and boat slips at the Gull Harbor Marina, . . . and to establish rules and regulations for the Gull Harbor Marina."

On 15 November 2011, the trial court entered an "Order and Judgment" which awarded GHHA $39,755.73 in attorneys' fees and costs against the individual defendants. Finally, on 16 November 2011, the trial court entered an "Order and Judgment" awarding the original plaintiffs $154,335.67 in attorneys' fees and costs against the individual defendants. GHYC and the individual defendants separately appeal.

## II.  Gull Harbor Yacht Club

GHYC raises multiple arguments on appeal, including: (1) that the trial court erred by granting summary judgment in favor of plaintiffs on their violation of restrictive covenants claim; (2) that the trial court erred by granting summary judgment in favor of plaintiffs on their tortious interference claim; (3) that the trial court erred in the relief granted for GHYC's violation of the restrictive covenants; (4) that the trial court erred in declaring that Warrender and the Youngs possessed riparian rights; and (5) that the trial court erred in dismissing GHYC's claims against GHHA.

### A. Restrictive Covenants

GHYC first argues that the trial court erred by granting summary judgment in favor of plaintiffs on their violation of restrictive covenants claim. Specifically, GHYC contends that (1) the restrictive covenants in the General Plan and its Revision did not apply to GHYC; (2) that GHYC did not engage in any conduct that would violate the restrictive covenants; and (3) that any claim for violation should have been barred by the doctrine of laches. We disagree.

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is

---

2. The trial court entered a separate "Amended Order and Judgment" which contained findings of fact and conclusions of law that supported its denial of the Rule 60(b) motion.

entitled to a judgment as a matter of law.' " *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008)(quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)).

> In addressing a motion for summary judgment, the trial court is required to view the pleadings, affidavits and discovery materials available in the light most favorable to the non-moving party to determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law.

*Pine Knoll Assn., v. Cardon*, 126 N.C. App. 155, 158, 484 S.E.2d 446, 448 (1997).

### 1. Application of Restrictive Covenants

**[1]** GHYC first contends that the restrictive covenants which were contained in the General Plan and the Revision were not binding upon it. We disagree.

> Restrictive covenants may be enforced by and against any grantee where the owner of a tract of land subdivides it and sells distinct parcels thereof to separate grantees, imposing restrictions on its use pursuant to a general plan of development or improvement . . . . Restrictions under a general plan of development may be enforced against subsequent purchasers of the land who take with notice of the restriction. The test for determining whether a general plan of development exists is whether substantially common restrictions apply to all similarly situated lots.

*Medearis v. Trs. of Myers Park Baptist Church*, 148 N.C. App. 1, 5-6, 558 S.E.2d 199, 203 (2001)(internal quotations and citations omitted). In the instant case, Smith and his wife, who were the record owners of the entire Gull Harbor property, recorded a "General Plan of Subdivision Section I Gull Harbor" which applied to "[t]hat area described as Blocks A, B, C, of Section 1, of Gull Harbor as shown on the map described above in Map Book 9, at Page 28." Smith subsequently conveyed the vast majority of residential lots in Gull Harbor to Gull Harbor, Inc. That conveyance was "subject to the Restrictive Covenants of Record pertaining to said Section One[.]" When Smith later sold the marina to Foley and Vakiener in 1987, the deed similarly noted that it was made subject to the "[r]ights of owners in lots in the Gull Harbor Subdivision to use of that portion of the property designated as 'Gull Harbor Marina' as set out in General Plan of Subdivision, Section 1, Gull Harbor . . . ." This language

continued to appear in all future conveyances of the marina, including the conveyance to Unger, until GHYC received its deed. GHYC's deed omitted any explicit reference to the restrictions.

GHYC contends that the language in the deed from Smith to Foley and Vakiener created a personal covenant that would have been enforceable only by Smith. In making its argument, GHYC relies upon the principle that

> in the *absence* of indications that the land was subdivided and first conveyed as part of a general plan by the original grantor to impose uniform restrictions upon all the parcels conveyed, [a covenant in a deed] would stand merely as an obligation personal to and enforceable only by the original grantor.

*Hawthorne v. Realty Syndicate, Inc.*, 300 N.C. 660, 665, 268 S.E.2d 494, 497 (1980) (citing *Stegall v. Housing Authority*, 278 N.C. 95, 178 S.E.2d 824 (1971) and *Sheets v. Dillon*, 221 N.C. 426, 20 S.E.2d 344 (1942)).

However, contrary to GHYC's assertions, the restrictive covenants at issue clearly apply to the marina under the quoted language in *Hawthorne*. Smith and his wife originally owned the entirety of Section I of Gull Harbor. During their ownership, they recorded the restrictions at issue as part of a general plan that governed that section, including the marina, and they included specific provisions regarding access to and maintenance of the marina in the General Plan. Smith subdivided the property and sold portions of it to different grantees, and Smith's conveyances, including the eventual conveyance of the marina, consistently noted that they were subject to the previously recorded General Plan. Thus, there were definitive "indications that the land was subdivided and first conveyed as part of a general plan by the original grantor to impose uniform restrictions upon all the parcels conveyed . . . ." *Id.*

The fact that the marina parcel was conveyed many years after the residential parcels does not alter the fact that the marina was included as part of the recorded map of Section I of Gull Harbor and that portions of the General Plan specifically governed the use of the marina by Gull Harbor lot owners. The General Plan burdened the owner of the marina by requiring the owner to provide access to the marina and the boat slips therein to the residents of Gull Harbor, and benefited the owner of the marina by requiring Gull Harbor residents to contribute monetarily to the marina's maintenance. If, as GHYC suggests, the marina was not subject to the General Plan, Gull Harbor lot owners would have no remedy at law if the marina owners denied them their right to access the marina

as provided by the General Plan, while leaving them with the burden of providing monetary support to the marina owner.

Ultimately, the language of the General Plan and Smith's subsequent conveyances conclusively indicate that Smith intended for the General Plan to govern all of Gull Harbor Section I, including the marina property, and "the primary purpose of a court when interpreting a covenant is to give effect to the <u>original</u> intent of the parties[.]" *Armstrong v. Ledges Homeowners Ass'n*, 360 N.C. 547, 555, 633 S.E.2d 78, 85 (2006). Moreover, GHYC had notice of the restrictions via the language noting that the marina property was subject to the General Plan which was included in multiple deeds in the marina's chain of title. Accordingly, the trial court properly concluded that the marina was subject to the General Plan and its Revision, which was adopted in compliance with the General Plan. This argument is overruled.

## 2. Breach of Restrictive Covenants

GHYC next contends that, even if the restrictive covenants in the General Plan and the Revision were binding upon GHYC as the owner of the marina, GHYC did not breach those covenants. We disagree.

"[T]his Court has held that restrictive covenants are contractual in nature, and that acceptance of a valid deed incorporating covenants implies the existence of a valid contract with binding restrictions." *Moss Creek Homeowners Ass'n, Inc. v. Bissette*, 202 N.C. App. 222, 228, 689 S.E.2d 180, 184 (2010).

> Because covenants originate in contract, the primary purpose of a court when interpreting a covenant is to give effect to the original intent of the parties; however, covenants are strictly construed in favor of the free use of land whenever strict construction does not contradict the plain and obvious purpose of the contracting parties.

*Armstrong*, 360 N.C. at 555, 633 S.E.2d at 85.

> [A]lthough real property covenants are typically construed in favor of free use of land, such construction must be reasonable and this canon should not be applied in such a way as to defeat the plain and obvious purposes of a restriction. In construing restrictive covenants, the fundamental rule is that the intention of the parties governs, and that their intention must be gathered from study and consideration of *all* the covenants contained in the instrument or instruments creating the restrictions.

*Southeastern Jurisdictional Admin. Council, Inc. v. Emerson,* 363 N.C. 590, 595-96, 683 S.E.2d 366, 369 (2009)(internal quotations and citations omitted). In the instant case, plaintiffs asserted that GHYC breached the restrictive covenants in the General Plan and the Revision by (1) entering into 99-year leases with the non-owners and (2) charging Gull Harbor residents a $200.00 annual user fee for use of the marina.

a. 99-Year Leases

**[2]** When seeking summary judgment below, plaintiffs first alleged that the 99-year leases with the non-owners breached the restrictive covenants. Under the terms of the Revision,

> [t]he yacht basin and the boat ramp shall be for the exclusive use of Gull Harbor lot owners and their house guests, except that the owners of the marina property reserve the right to rent boat slips to others unless or until said slips are needed by Gull Harbor lot owners who will then be given preference on a first come-first served basis.

This language indicates that it was the intention of the parties who enacted the Revision to have the marina operate exclusively for the benefit of Gull Harbor lot owners. However, the parties also explicitly agreed to an exception to this exclusive use if the lot owners declined to take advantage of their rights in the boat slips. The parties disagree as to whether the 99-year leases to the non-owners were appropriate under this exception.

Plaintiffs do not dispute that GHYC could enter into leases for boat slips with individuals who did not own a lot in Gull Harbor. Rather, plaintiffs contend that the 99-year leases violated the above language from the Revision because "the 99 year leases constitute effective sales." However, plaintiffs do not cite to any authority for this proposition and we have found none in North Carolina. In general, the term of a lease is established by the parties in the executed lease agreement and only limited by the term the parties agreed upon. Our Supreme Court has suggested that even perpetual leases would be permissible, so long as certain requirements are met. *See Lattimore v. Fisher's Food Shoppe, Inc.,* 313 N.C. 467, 473, 329 S.E.2d 346, 349-50 (1985) (adopting a bright line rule that "provisions allegedly granting perpetual leases or rights to perpetual renewals" must contain "the terms 'forever', 'for all time', 'in perpetuity' or words *unmistakably* of the same import" in order for the leases to be upheld). Thus, contrary to plaintiffs' assertions, the mere length of the leases to the non-owners is insufficient to alter the

character of the leases and transform them into sales. Since the Revision permits the owner of the marina to "rent boat slips to others," GHYC did not violate that restrictive covenant merely by entering into 99-year leases with the non-owners.

However, GHYC's authority to lease boat slips to outside individuals only exists "unless or until said slips are needed by Gull Harbor lot owners . . . ." Plaintiffs contend that the 99-year leases render GHYC unable to comply with this limitation because they do not contain language which would permit GHYC to dispossess the non-owners from their leases if a Gull Harbor lot owner desired a boat slip prior to the expiration of the non-owners' leases and no other slips were available. While plaintiffs appear to be correct that GHYC would be in breach of this provision in the Revision if it failed to provide a boat slip to a Gull Harbor lot owner that desired a slip, they presented no evidence to the trial court that this scenario had ever occurred.

The Revision specifically acknowledges GHYC's right to rent boat slips to outsiders and places no restrictions on that right "unless or until said slips are needed by Gull Harbor lot owners who will then be given preference on a first come-first served basis." Absent evidence that Gull Harbor lot owners have sought boat slips in the marina and been unable to obtain them from GHYC, which is all that is required by the covenant at issue, there is no basis for concluding that GHYC breached that covenant by entering into 99-year leases with the non-owners. Thus, the trial court erred by concluding that GHYC breached the covenants by merely entering into the 99-year leases with the non-owners. Since we have determined that the 99-year leases do not, standing alone, breach the restrictive covenants, we do not address GHYC's argument that the doctrine of laches bars challenges to the 99-year leases.

b. User Fee

[3] Plaintiffs also alleged that GHYC violated the restrictive covenants by charging all Gull Harbor lot owners a $200.00 annual user fee to access the marina. Under the General Plan,

> [GHHA] shall be responsible for the maintenance of the marina [and] the channel from the marina to deep water . . . . In order to accomplish same, and to have funds in hand therefor, each property owner shall be required to make an annual deposit of $36.00 per lot, . . . to be held in escrow and used at such times as maintenance, upkeep, repair, or deepening of the channel or marina is deemed

necessary. The amount of this annual fee may be changed only if deemed necessary by [GHHA] and this shall be accomplished by a two-thirds vote of its members.

In the section of the Revision entitled "Community Expenses," the Revision amended this provision and established GHHA's new responsibilities regarding the marina as follows:

All amounts expended by [GHHA] to assist the owner in maintenance of the marina, the ramp, and the channel to deep water, shall be limited to a maximum of $3,000.00 per calendar year, with any unused portion from any year being available for use in future years, if needed, unless otherwise authorized by the membership by a 2/3 vote . . . . Nothing herein contained shall be construed to pledge the credit of [GHHA] for such repairs.

Thus, under the terms of the Revision, GHHA was no longer solely responsible for the maintenance of the marina. Instead, GHHA would only be required to assist the owner of the marina in maintaining the marina in an amount not to exceed $3,000.00 per year. Nonetheless, beginning in 2007, GHYC restricted access to the marina to only those Gull Harbor lot owners that paid a $200.00 annual user fee. The undisputed evidence is that the purpose of this fee was "so that those who wanted to use the marina could help pay for its maintenance . . . ."

Permitting GHYC to collect this user fee would defeat the purpose of the specific provision in the Revision regarding the payment of maintenance costs by Gull Harbor lot owners, which explicitly limited the maximum amount of maintenance costs to be contributed. Thus, GHYC could not, without violating the terms of the Revision, attempt to collect further maintenance costs above and beyond that which are specified in that document. Accordingly, there is no genuine issue of material fact that GHYC violated the restrictive covenants in the Revision when it denied access to the marina by Gull Harbor lot owners until they paid a $200.00 annual user fee. Therefore, the trial court properly granted summary judgment in favor of plaintiffs on this issue. This argument is overruled.

c. Relief Granted by Trial Court

[4] GHYC argues that the trial court erred in the relief it granted to plaintiffs for GHYC's violation of the covenants. "When enforcing a restrictive covenant and restoring the status quo, a mandatory injunction is the proper remedy." *Buie v. High Point Assocs. Ltd. P'ship*, 119 N.C. App. 155, 160, 458 S.E.2d 212, 216 (1995).

The issuance of such an injunction depends upon the equities of the parties and such balancing is clearly within the province of the trial court. Whether injunctive relief will be granted to restrain the violation of such restrictions is a matter within the sound discretion of the trial court . . . and the appellate court will not interfere unless such discretion is manifestly abused.

*Id.* at 161, 458 S.E.2d at 216 (internal quotations and citations omitted).

In the instant case, the trial court's final judgments and orders granted the following relief for GHYC's breach of restrictive covenants: (1) the trial court invalidated the 99-year leases of the non-owners and ordered the summary ejectment of the non-owners from their boat slips; (2) the trial court ordered that "the GHHA shall be put in possession of [the non-owners' boat slips] for the purpose of determining which lot owners shall be allowed to lease said slips," the terms of which were to be consistent with the Revision; and (3) the trial court ordered that "[GHHA] shall exercise dominion and control over the docks and boat slips at the Gull Harbor Marina, . . . and . . . establish rules and regulations for the Gull Harbor Marina."

It is apparent from the record that the first and second forms of relief, and at least portions of the third form of relief, which were granted by the trial court were premised upon a determination that GHYC breached the restrictive covenants by entering into 99-year leases with the non-owners. Since we have determined that the mere entry into these leases did not violate the covenants, we must vacate the portion of the trial court's orders and judgments which ejected the non-owners from their boat slips and awarded control of those slips to GHHA.

Moreover, GHYC's actual violation of the covenants, which consisted of denying Gull Harbor lot owners their right to access the marina unless they paid a $200.00 annual user fee, does not support either the trial court's award of dominion and control of the marina to GHHA or the court granting GHHA the power to establish rules and regulations for the marina, as GHHA has no ownership interest in the marina under the Revision or any other instrument. There is nothing in the Revision which would provide a basis for granting GHHA either possession of or control over the marina. Instead, the Revision provides GHHA and Gull Harbor lot owners unfettered *access* to the marina, and the trial court's remedy must be consistent with ensuring that that access is not impeded by GHYC. Since the trial court's relief went far beyond simply restoring

the status quo required by the Revision, allowing all Gull Harbor lot owners to access the marina without the payment of an additional maintenance fee, the relief granted constitutes an abuse of discretion. Thus, we must vacate the entirety of the relief granted to plaintiffs as a result of GHYC's breach of the Revision and remand for the entry of relief which appropriately restores the status quo in accordance with the terms of the Revision.

## B. Tortious Interference

**[5]**	GHYC argues that the trial court erred by granting plaintiffs' motion for summary judgment as to their tortious interference claim. We agree.

The elements of a tortious interference claim are:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988).

In the instant case, plaintiffs' contract claims were limited to enforcing their rights under the covenants contained in the General Plan and the Revision. We have already determined that GHYC was bound by the covenants contained in those documents and that, by its conduct, GHYC directly breached those covenants. Since GHYC directly breached the covenants, rather than inducing a third party's breach, a tortious interference claim cannot be applicable to it. Accordingly, the trial court erred in granting summary judgment to plaintiffs on this claim. We reverse this portion of the trial court's order and remand for the entry of summary judgment in favor of GHYC on plaintiffs' tortious interference claim.

## C. Riparian Rights

GHYC argues that the trial court erred when it granted summary judgment in favor of Warrender and the Youngs for their claims that they possessed riparian rights. GHYC contends that (1) these claims were not properly before the trial court; and (2) that the evidence demonstrated that Warrender and the Youngs did not actually possess riparian rights.

## 1. Warrender's Claim

### i. *Res Judicata*

**[6]** GHYC first contends that Warrender was barred by the doctrine of *res judicata* from asserting his riparian rights claim, since that claim is foreclosed by the prior Smith-Warrender consent judgment.

> Under the doctrine of res judicata or claim preclusion, a final judgment on the merits in one action precludes a second suit based on the same cause of action between the same parties or their privies. The doctrine prevents the relitigation of all matters . . . that were or should have been adjudicated in the prior action.

*Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004) (internal quotations and citations omitted). In the instant case, the Smith-Warrender consent judgment does not appear to have adjudicated a claim by Warrender for riparian rights nor does it appear that such a determination was necessary to that judgment. Instead, the judgment declared that lessees of six boat slips near Warrender's property would access those slips without trespassing upon "the lawn or land area" of Warrender's lot. Therefore, *res judicata* would not bar Warrender's claim that GHYC trespassed upon Warrender's riparian rights in the instant case.

### ii. Warrender's Complaint

**[7]** GHYC also contends that Warrender was not entitled to a determination of his claim for riparian rights because he did not seek that relief in his complaint. However, as part of Warrender's trespass claim in his complaint, he specifically alleged that his "property is immediately adjacent to the public trust waters known as Gull Harbor marina and is riparian property under the laws of North Carolina; therefore, [GHYC] has been continuously trespassing on [Warrender]'s property and usurping [Warrender]'s riparian rights since its inception." Moreover, in his claim for relief, Warrender specifically sought "injunctive relief allowing [Warrender], his family, and Gull Harbor residents, . . . to assert their lawful rights as owner of the riparian land immediately adjacent to the North Carolina Public Trust waters known as the Gull Harbor marina[.]"

Thus, in order to fully adjudicate Warrender's claim that GHYC was trespassing upon his riparian rights, it was necessary for the trial court to determine whether Warrender validly possessed those rights in the first place. *See Singleton v. Haywood Elec. Membership Corp.*, 357 N.C.

623, 627, 588 S.E.2d 871, 874 (2003) ("[A] claim of trespass requires: (1) *possession of the property by plaintiff when the alleged trespass was committed*; (2) an unauthorized entry by defendant; and (3) damage to plaintiff." (emphasis added and internal quotation and citation omitted)). Accordingly, the trial court properly addressed Warrender's riparian rights claim. This argument is overruled.

2. The Youngs' Claim

[8] GHYC also contends that the Youngs were not entitled to a determination of their claim for riparian rights because they did not file a separate complaint after they were joined as parties to this action. In their formal motion to join the instant case as plaintiffs, the Youngs alleged that they had "riparian rights to the Marina, the channel from the Marina, and Bogue Sound." They further alleged that "[GHYC]'s assertion of riparian rights are or may be found to be in direct conflict with Young's assertion of riparian rights." In their motion for summary judgment, the Youngs sought for the trial court "to enter a judgment providing that Wayne and Barbara Young have riparian rights to the Marina, the channel from the Marina and Bogue Sound, the right to construct wharfs, piers, or landings to enjoy their riparian rights . . . ." However, the Youngs acknowledge that they never filed a formal pleading after they were joined as plaintiffs.

Rule 19 of the North Carolina Rules of Civil Procedure merely requires that "those who are united in interest must be joined as plaintiffs or defendants." N.C. Gen. Stat. § 1A-1, Rule 19(a) (2011). It does not specifically require the joined parties to file a separate pleading. Nor have our Courts imposed such a requirement. Our Supreme Court has acknowledged that a necessary party joined as a plaintiff is permitted to file a separate pleading. *See Booker v. Everhart*, 294 N.C. 146, 158, 240 S.E.2d 360, 367 (1978) ("Absence of necessary parties does not merit a nonsuit. Instead, the court should order a continuance so as to provide a reasonable time for them to be brought in and plead."). However, that Court has also acknowledged that a necessary party joined as a plaintiff may choose to file nothing. *See Terrace, Inc. v. Indemnity Co.*, 243 N.C. 595, 599, 91 S.E.2d 584, 588 (1956) (remanding the case so that a necessary party could be joined as a plaintiff "with leave either to adopt the complaint or file a new complaint" but also acknowledging that the newly joined plaintiff could "elect to refuse to file any pleadings").

In the instant case, when the trial court granted the Youngs' motion to join as plaintiffs, it necessarily determined that the Youngs were united in interest with the other plaintiffs who had already filed claims.

Both the Youngs' motion to join and motion for summary judgment reflect that their riparian rights claim was based on substantially the same allegations as the claim brought by Warrender in his complaint. We find no authority in either the Rules of Civil Procedure or in our caselaw which would have required the Youngs to file a separate pleading after their joinder when their claims were reasonably represented by the claims already before the court at the time the Youngs were joined. Thus, we hold that the trial court properly considered the Youngs' riparian rights claim. This argument is overruled.

### 3. Evidence Pertaining to Riparian Rights Claims

[9] Finally, GHYC argues that the trial court erred by granting summary judgment to Warrender and the Youngs because the undisputed evidence actually reflects that they possess no riparian rights. "Riparian rights are vested property rights that . . . arise out of ownership of land bounded or traversed by navigable water." *In re Protest of Mason*, 78 N.C. App. 16, 24-25, 337 S.E.2d 99, 104 (1985).

> [R]iparian rights are available to the owners of property that are adjacent to or encompass bodies of water that are navigable in fact. The riparian rights available to the owners of property bounded or traversed by water are derived from two distinct properties: 1) the principal estate of land extending to the shoreline of [the body of water in question], and 2) the appurtenant estate of submerged land in [the body of water in question] benefitting the principal estate. According to well-established North Carolina law, riparian owners have a qualified property in the water frontage belonging, by nature, to their land, the chief advantage growing out of the appurtenant estate in the submerged land being the right of access over an extension of their water fronts to navigable water, and the right to construct wharves, piers, or landings . . . .

*Newcomb v. Cty. of Carteret*, 207 N.C. App. 527, 541-42, 701 S.E.2d 325, 336 (2010) (internal quotations and citations omitted). In the instant case, the parties dispute whether Warrender and the Youngs or GHYC owns the bulkhead on the outer portion of the marina. This bulkhead constitutes the land which is "adjacent to . . . [a] bod[y] of water that [is] navigable in fact" and provides the basis for any riparian rights claim. *Id.* at 541, 701 S.E.2d at 336.

Warrender and the Youngs contend that the bulkhead represents the boundary line of their respective properties. In support of this

contention, Warrender and the Youngs cite the recorded map of Section I of Gull Harbor from 1972, which shows the property lines for their respective lots going directly through the bulkhead. In addition, they rely on a portion of the metes and bounds description of the marina in the deed from Smith to Foley and Vakiener which they argue demonstrates that the bulkhead constitutes their respective property lines:

> . . . thence S 73°23' W 131.38 feet to a point *in the bulkhead of the Gull Harbor Marina*; thence with the outside edge of the said bulkhead the following courses and distances: N 01°55'50" W 88.14 feet; N 13°45'07" W 128.26 feet; S 76°19'45" W 80.90 feet; N 13°40'15" W 306.83 feet; N 76°19'45" E 149.31 feet; S 13°23'05" E 128.16 feet *to a PK nail in the bulkhead*;

(Emphasis added). Finally, Warrender testified in a deposition that the Department of Coastal Management had previously recognized his riparian rights.

In opposition to Warrender and the Youngs' evidence, GHYC cites several pieces of evidence which it contends unequivocally demonstrate that the bulkhead belongs to GHYC. First, GHYC notes that Smith's deed to Foley and Vakiener states that it conveyed "all improvements located thereon, including but not limited to bulkheading, docks and finger piers, and electrical and water installations." This language was included in all deeds in the marina's chain of title, including the deed to GHYC. GHYC also contends that the metes and bounds description of the marina quoted above, specifically the portion referencing the marina property running "with the outside edge of the said bulkhead," indicates that GHYC owns the bulkhead. In addition, GHYC notes that Warrender's property is subject to a fifteen- foot maintenance easement to allow it to keep the bulkhead in good repair, and reasons that its duty to maintain the bulkhead provides additional evidence that GHYC owns the bulkhead itself. Finally, GHYC contends that other surveys in the record indicate that GHYC owns both the bulkhead and a narrow strip of land between the bulkhead and Warrender and Youngs' respective lots.

Considering the evidence presented by both parties in the light most favorable to GHYC, as required for our review of a summary judgment motion, there is a genuine issue of material fact as to the ownership of the bulkhead adjacent to the Warrender and Young lots. Since it is necessary to determine this ownership in order to resolve Warrender and the Youngs' riparian rights claims, summary judgment was inappropriate. We must reverse the trial court's grant of summary judgment to

Warrender and the Youngs as to this issue and remand the case for a trial to determine the true ownership of the bulkhead and its accompanying riparian rights.

### D. Counterclaims

**[10]** Finally, GHYC argues that the trial court erred by granting summary judgment in favor of GHHA on its counterclaims. We disagree.

In the instant case, GHYC's counterclaims were based upon allegations that GHHA failed to contribute to the maintenance of the marina as required by the General Plan. According to GHYC's allegations, "[t]hrough 2004 GHHA paid some, not all, and not nearly enough money to the various owners of the Marina to maintain it." GHYC further alleged that "[i]n 2007, GHYC largely 'gave up' in its attempt and expectations that GHHA would ever pay substantial amount for maintenance of the Marina. GHYC renounced its relationship with GHHA and protected the use of the boat ramp by changing the lock on the chain across the Marina boat ramp."

As previously noted, "restrictive covenants are contractual in nature . . . ." *Moss Creek*, 202 N.C. App. at 228, 689 S.E.2d at 184. The statute of limitations for a breach of contract claim is three years. N.C. Gen. Stat. § 1-52(1) (2011). The undisputed evidence is that both parties ceased to perform their duties under the restrictive covenants in 2007, and, as a result, no breach of the restrictive covenants could occur after that time. However, GHYC did not file its counterclaims until 2 February 2011,[3] which was more than three years after the last possible breach and thus beyond the statute of limitations. Accordingly, the trial court properly granted summary judgment in favor of GHHA as to GHYC's counterclaims. This argument is overruled.

### III. Individual Defendants

The individual defendants also raise multiple issues on appeal, including: (1) that the trial court erred by entering a partial summary judgment order prior to the joinder of all necessary parties; (2) that the trial court erred by granting summary judgment to plaintiffs on their claim against the individual defendants for violation of restrictive covenants; (3) that the trial court erred by failing to grant summary judgment to the individual defendants on their affirmative defense of laches;

---

3. GHYC's counterclaims do not relate back to the filing of the original plaintiffs' complaint. *See Pharmaresearch Corp. v. Mash*, 163 N.C. App. 419, 426-27, 594 S.E.2d 148, 153-54 (2004).

(4) that the trial court erred by granting summary judgment to plaintiffs for their tortious interference claim against the individual defendants; and (5) that the trial court erred by awarding attorneys' fees to plaintiffs.

### A. Necessary Parties

[11] The individual defendants first argue that the trial court erred by granting summary judgment to the original plaintiffs on their claims for breach of restrictive covenants and tortious interference with a contract because, at the time the summary judgment order was entered, all necessary parties had not been joined in the case. We disagree.

"A necessary party is one who is so vitally interested in the controversy that a valid judgment cannot be rendered in the action completely and finally determining the controversy without his presence." *Carding Developments v. Gunter & Cooke*, 12 N.C. App. 448, 451-52, 183 S.E.2d 834, 837 (1971). Thus, pursuant to N.C. Gen. Stat. § 1A-1, Rule 19(a) (2011), necessary parties "must be joined as plaintiffs or defendants[.]"

In the instant case, the trial court entered an order granting partial summary judgment to the original plaintiffs on their claims for breach of restrictive covenants and tortious interference. Simultaneously, the court ordered that "the Gull Harbor Home Owners Association, Inc., and all current property owners in the Gull Harbor subdivision are hereby joined, *ex mero motu*, as necessary parties to this action." The individual defendants contend that the trial court's failure to join all necessary parties prior to the entry of this partial summary judgment order invalidates that order.

This Court has previously explained that "[a] judgment which is *determinative of a claim arising in an action* to which one who is 'united in interest' with one of the parties has not been joined is void." *Ludwig v. Hart*, 40 N.C. App. 188, 190, 252 S.E.2d 270, 272 (1979) (emphasis added). In *Ludwig*, the Court held that the specific "portion of the judgment" entered without the joinder of a party necessary to that claim was void. *Id.* However, the Court did not invalidate the remaining portion of the judgment, but instead reviewed the parties' arguments involving the remaining claims. *Id.* at 190-92, 252 S.E.2d at 272-74. Thus, consistent with *Ludwig* and Rule 19, we must analyze each individual claim decided by the trial court and determine whether the full adjudication of that particular claim required additional necessary parties.

In the instant case, the individual defendants argue only that the trial court failed to join all necessary parties before it granted summary judgment in favor of plaintiffs on their claim that GHYC and the

individual defendants violated the restrictive covenants contained in the General Plan and its Revision. To support their argument, the individual defendants rely upon our Supreme Court's decision in *Karner v. Roy White Flowers, Inc.*, 351 N.C. 433, 527 S.E.2d 40 (2000). In *Karner,* the plaintiffs owned property in a residential subdivision in which each lot was governed by a restrictive covenant which limited the lot to residential use. *Id.* at 434, 527 S.E.2d at 41. The defendants intended to demolish residential properties on three lots and replace them with commercial properties. *Id.* The plaintiffs sought an injunction to block the demolition and construction. *Id.* The defendants answered the plaintiffs' complaint, asserting the affirmative defense "that a change of circumstances had occurred making use of the lots for residential purposes no longer feasible." *Id.* The plaintiffs then moved to join all other property owners in the subdivision, and the trial court denied the motion. *Id.* at 435, 527 S.E.2d at 41. The trial court ultimately granted a directed verdict in favor of the defendants based upon the statute of limitations. *Id.* at 435, 527 S.E.2d at 42. On appeal, our Supreme Court reversed the trial court's denial of the plaintiffs' motion to require joinder. *Id.* at 440, 527 S.E.2d at 45. The Court held that all property owners in the subdivision were necessary parties because

> if the residential restrictive covenant is abrogated as to the lots owned by defendants, each property owner within the subdivision would lose the right to enforce that same restriction. Unless those parties are joined, they will not have been afforded their day in court. *An adjudication that extinguishes property rights without giving the property owner an opportunity to be heard cannot yield a valid judgment.* For this reason, we conclude the nonparty property owners . . . are necessary parties to this action because the voiding of the residential-use restrictive covenant would extinguish their property rights.

*Id.* at 440, 527 S.E.2d at 44 (emphasis added and internal quotations and citations omitted).

The individual defendants contend that since this case, like *Karner,* involves the enforcement of restrictive covenants, all Gull Harbor lot owners were required to be joined prior to the trial court's determination that the individual defendants violated the covenants. However, *Karner* is inapplicable to the instant case. In *Karner,* the trial court entered a judgment against the plaintiff lot owners after denying joinder to the remaining non-party lot owners. *Id.* As a result, the non-joined lot owners had their property rights extinguished "without giving the

property owner an opportunity to be heard . . . ." *Id.* By necessity, the parties raising the issue on appeal were the plaintiff lot owners who had lost before the trial court.

In contrast, the lot owners in the instant case prevailed in the trial court's partial summary judgment order. The court upheld and enforced their property rights, and, thus, unlike the non-joined lot owners in *Karner*, their rights were not extinguished without providing them an opportunity to be heard. Nothing in *Karner* suggests that an *opposing party* which seeks to *impair* the opposing lot owners' property rights has standing to protect the rights of non-party lot owners by arguing on appeal that they were not joined when required. Accordingly, we hold that the individual defendants cannot properly raise this argument to challenge the trial court's partial summary judgment order. This argument is overruled.

### B. Violation of Restrictive Covenants

[12] The individual defendants next argue that the trial court erred in granting summary judgment to plaintiffs on their violation of restrictive covenants claim against the individual defendants. We agree.

As previously noted, plaintiffs' claims for violation of the General Plan and its Revision were based upon two acts: (1) the entry into 99-year boat slip leases with the non-owners and (2) the erection of a chain and requirement of a $200.00 annual user fee from any Gull Harbor lot owner that wished to access the marina. Since we have already determined that the 99-year boat slip leases to the non-owners do not currently violate the covenants, we will limit our analysis to a determination of the individual defendants' liability for the imposition of the $200.00 annual user fee. The individual defendants contend that they cannot be individually liable for this act.

It is undisputed that GHYC is a nonprofit corporation governed by Chapter 55A of our General Statutes. Furthermore, there is no dispute that the individual defendants are all members of GHYC. Under the statutes which govern nonprofit corporations, "[a] member of a corporation is not, as such, personally liable for the acts, debts, liabilities, or obligations of the corporation." N.C. Gen. Stat. § 55A-6-22 (2011).

In the instant case, the individual defendants did not possess the necessary ownership interest in the marina which would provide the authority to restrict access to it, outside of their capacity as agents of GHYC. Only GHYC, by virtue of its ownership of the marina, possessed the right to exclude plaintiffs from the marina as a whole. *See generally*

*Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435, 73 L. Ed. 2d 868, 882, 102 S. Ct. 3164, 3176 (1982)("The power to exclude has traditionally been considered one of the most treasured strands in an owner's bundle of property rights." (footnote omitted)). The individual defendants all had a leasehold interest in an individual boat slip within the marina which provided the power to exclude others from that boat slip. Nonetheless, nothing in the lease agreements could be construed so broadly as to permit the individual defendants to exclude other individuals from the entirety of the marina.

Therefore, since the individual defendants did not possess any individual permanent ownership interest in the marina, they could not be individually liable for the imposition of the $200.00 annual user fee, the act which supported the trial court's determination that the restrictive covenants in the Revision had been breached. Their status as lot owners in Gull Harbor does not alter their liability, since any actions that they may have taken to breach the covenants were in their capacity as members of GHYC, rather than in their individual capacity. Ultimately, the individual defendants' only liability in the instant case would be for actions for which they cannot be personally liable. N.C. Gen. Stat. § 55A-6-22 (2011). Consequently, the trial court erred by granting plaintiffs' motion for summary judgment against the individual defendants on this claim. That portion of the trial court's order must be reversed and remanded for the entry of summary judgment in favor of the individual defendants. Since we have ruled in favor of the individual defendants on this claim, it is unnecessary to address their remaining arguments regarding it.

C. Tortious Interference

[13] The individual defendants additionally argue that the trial court erred by granting summary judgment in favor of plaintiffs for their claim of tortious interference. It has previously been determined that GHYC directly breached the restrictive covenants in the Revision and that any actions by the individual defendants which could be considered a breach of those covenants were undertaken in their role as members of GHYC. Since any actions which the individual defendants undertook to breach the covenants would have been undertaken in their capacity as members of GHYC, they could not be considered third parties that induced GHYC to breach the covenants. Thus, the trial court erred by granting summary judgment in favor of plaintiffs on this claim against the individual defendants. That portion of the trial court's order must also be reversed and remanded for entry of summary judgment in favor of the individual defendants.

### D. Attorneys' Fees

[14] Finally, the individual defendants claim that the trial court erred by awarding plaintiffs attorneys' fees. The trial court awarded attorneys' fees pursuant to N.C. Gen. Stat. § 47F-3-120, which allows for the award of reasonable attorneys' fees "in an action to enforce provisions of the articles of incorporation, the declaration, bylaws, or duly adopted rules or regulations" of a planned community. N.C. Gen. Stat. § 47F-3-120 (2011). Since the award of attorneys' fees was based upon the trial court's determination that the individual defendants violated the restrictive covenants contained in the Revision in their individual capacities, our reversal of that determination also necessitates the reversal of the attorneys' fee award. Therefore, we reverse the trial court's award of attorneys' fees against the individual defendants.

### IV. Conclusion

GHYC, as the owner of the marina, was subject to the restrictive covenants contained in the General Plan and the Revision. There was no genuine issue as to any material fact regarding whether GHYC breached those restrictive covenants by charging a $200.00 annual user fee to Gull Harbor lot owners for access to the marina, and, as a result, the trial court properly granted summary judgment in favor of plaintiffs and against GHYC on that claim. That portion of the trial court's order is affirmed.

However, GHYC did not breach the restrictive covenants by entering into the 99-year leases with the non-owners, as there was no evidence presented that a Gull Harbor lot owner attempted to rent a boat slip in the marina and was denied due to the unavailability of slips. Thus, the trial court erred by granting any relief to plaintiffs based upon the 99-year leases constituting a breach of the covenants. Moreover, the trial court abused its discretion in the relief it ordered to remedy GHYC's attempts to limit access to the marina by imposition of a $200.00 annual user fee, because the relief granted exceeded merely restoring the status quo required by the Revision. Instead, the trial court granted plaintiffs rights which were not supported by the Revision. Consequently, the trial court's relief is vacated and remanded for the entry of relief consistent with ensuring plaintiffs' right of access to the marina under the Revision.

The trial court erred by granting summary judgment in favor of plaintiffs on their tortious interference claim, as GHYC directly breached the covenants, but did not induce a third party to breach. That portion of the trial court's order is reversed and remanded for entry of summary judgment in favor of GHYC.

**WARRENDER v. GULL HARBOR YACHT CLUB, INC.**

[228 N.C. App. 520 (2013)]

The trial court properly considered the riparian rights claims of Warrender and the Youngs. However, the trial court erred in granting summary judgment in favor of those individuals because there are genuine issues of material fact regarding the ownership of the bulkhead which provides the basis for any riparian rights. The trial court's summary judgment order is reversed and remanded for trial on the issue of the riparian rights claims of Warrender and the Youngs.

The individual defendants cannot challenge whether the trial court's partial summary judgment order was properly entered prior to the joinder of necessary parties, because they have no standing to assert the rights of any non-party Gull Harbor lot owners in a determination of whether defendants breached the restrictive covenants in the General Plan and its Revision. However, since the actions of the individual defendants which the trial court found to breach the restrictive covenants were carried out in the individual defendants' capacity as members of GHYC, the trial court erred in determining that they were liable for the breach in their individual capacities. Therefore, the portion of the trial court's order granting summary judgment in favor of plaintiffs on plaintiffs' claim for breach of restrictive covenants against the individual defendants is reversed and remanded for the entry of summary judgment in favor of the individual defendants. The trial court additionally erred by granting summary judgment in favor of plaintiffs on their tortious interference claim against the individual defendants. That portion of the trial court's order is also reversed and remanded for the entry of summary judgment in favor of the individual defendants. Since the individual defendants were not liable for the violation of the restrictive covenants in their individual capacity, the trial court erred by awarding plaintiffs costs and attorneys' fees against the individual defendants. That portion of the trial court's judgment is reversed.

Affirmed in part, reversed in part, vacated in part, and remanded.

Judges BRYANT and GEER concur.