PHARMARESEARCH CORPORATION, Plaintiff v. JAMES M. MASH, Defendant

No. COA03-213-2

(Filed 6 April 2004)

**1. Statutes of Limitation and Repose— breach of contract— breach of shareholders agreement—counterclaims—relation back**

The trial court did not err by granting summary judgment in favor of plaintiff corporation on defendant former employee's counterclaims for alleged breach of a shareholders agreement based on expiration of the statute of limitations, because: (1) N.C.G.S. § 1-52(1) establishes a three-year statute of limitations for an action brought upon a contract, obligation, or liability arising out of an express or implied contract; (2) assuming arguendo that plaintiff's actions were a breach of the shareholders agreement, defendant's right to sue for breach of contract arose at the latest when defendant received a letter from plaintiff on 1 June 1998 informing him unequivocally that he had been terminated for cause and that plaintiff was exercising its option to repurchase all of defendant's shares of company stock; (3) plaintiff failed to file his counterclaims until 21 August 2001 when his claims expired on 1 June 2001; (4) contrary to defendant's assertion that plaintiff's claim and his counterclaims accrued on the same date, plaintiff's cause of action against defendant for specific performance of the shareholder's agreement arose on 31 May 2001 when defendant expressly refused to return the certificate or to sign an acknowledgment that it was destroyed; and (5) contrary to defendant's assertion, counterclaims do not relate back to the date plaintiff filed its original action.

**2. Appeal and Error— preservation of issues—failure to present argument**

Although defendant contends the trial court erred by granting plaintiff's motion for costs in an action involving breach of a shareholders agreement, this issue is dismissed because: (1) defendant failed to present any argument or authority in support of its contention, and defendant failed to assert any basis upon which to conclude that the trial court erred; and (2) issues raised in defendant's brief but not supported by argument or authority are deemed abandoned under N.C. R. App. P. 28(b)(6).

### 3. Costs— voluntary dismissal without prejudice—expenses listed in statutes

The trial court did not err by denying defendant's motion for costs under N.C.G.S. § 1A-1, Rule 41 in an action involving breach of a shareholders agreement where plaintiff filed a voluntary dismissal without prejudice pursuant to Rule 41(a), because: (1) expenses not listed as costs in the North Carolina General Statutes will not be accommodated; and (2) defendant's motion for costs pursuant to Rule 41(d) referenced two items which were not enumerated in N.C.G.S. § 7A-305(d).

Appeal by defendant from orders entered 15 July 2002 and 14 October 2002 by Judge Ernest B. Fullwood in New Hanover County Superior Court. Originally heard in the Court of Appeals 1 December 2003, and opinion affirming the order of the trial court was filed on 6 January 2004, *PharmaResearch Corp. v. Mash*, 162 N.C. App. 180, —— S.E.2d —— (2004 N.C. App. LEXIS 70). Defendant's Petition for Rehearing was filed on 10 February 2004, and granted on 2 March 2004. This opinion supersedes the opinion filed 6 January 2004.

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Pressly M. Millen, for plaintiff-appellee.*

*Fletcher, Ray & Satterfield, L.L.P., by R. Jay Short, Jr. and Kimberly L. Moore, for defendant-appellant.*

LEVINSON, Judge.

Defendant (James Mash) appeals from entry of summary judgment on his counterclaims, and from the award of costs to plaintiff and the denial of his motion for costs. We affirm.

The relevant evidence is summarized as follows: Plaintiff (PharmaResearch Corporation) is a pharmaceutical development service company with corporate offices in Wilmington, North Carolina. In 1997, defendant was plaintiff's president, CEO, and one of plaintiff's shareholders. On 13 August 1997 plaintiff's shareholders, including defendant, executed an Amended and Restated Shareholders Agreement (the Shareholders Agreement). Paragraph 11 of the Shareholders Agreement gives plaintiff the right to repurchase an employee-shareholder's shares upon the occurrence of certain "option events," including "termination for Cause by the Company[.]" Paragraph 11 also states that:

> Upon the occurrence of any of the Option Events . . . the Company shall have the option . . . to purchase . . . the Stockholder Shares of . . . [the terminated employee] provided that the Company shall have first given written notice . . . [to the ex-employee] within sixty (60) days after the date that the Company receives notice of the [termination].

On 20 February 1998 plaintiff's board of directors held a meeting, attended by defendant. Members of plaintiff's board confronted defendant with their recent discovery of financial misconduct on defendant's part, including evidence that defendant had (1) paid himself an unauthorized $75,000 bonus which he concealed from plaintiff, and (2) failed to reimburse plaintiff for thousands of dollars in personal expenses that defendant charged to the company credit card. Plaintiff informed defendant that he was dismissed from his employment with plaintiff, effective immediately. Defendant's personal effects were removed from the building, and he did not perform any work for plaintiff after 20 February 1998.

Although defendant may have been, in the ordinary sense of the word, "fired" at the 20 February 1998 board meeting, the meeting did not resolve the issue of how defendant's separation would be structured. At the meeting, the board informed defendant that they had sufficient grounds to have defendant formally terminated for cause. However, because plaintiff also wished to avoid negative publicity about the company, the board offered defendant an opportunity to resign voluntarily, provided he agreed to certain conditions. At defendant's request, plaintiff sent defendant a proposed agreement setting out the terms for defendant's voluntary resignation from plaintiff. The proposed agreement provided that defendant would be allowed to resign voluntarily and would receive $50,000 in severance pay. In return, defendant had to sign a release of all claims against plaintiff, sell his shareholder stocks to plaintiff, and limit public comment about his separation from plaintiff to a statement that he "resigned to pursue other opportunities."

Defendant did not respond to plaintiff's proposal, which he received on 10 March 1998 *via* certified mail, return receipt requested. On 29 May 1998, plaintiff sent defendant another letter, also sent *via* certified mail, return receipt requested, and received by defendant on 1 June 1998. This letter stated in pertinent part:

> To date we have not received any response from you to our letter dated March 10, 1998. . . . [T]his letter shall confirm that **your**

PHARMARESEARCH CORP. v. MASH

[163 N.C. App. 419 (2004)]

**employment with the Company has been terminated for cause**. Accordingly, pursuant to the provisions of Section 11 of the . . . [Shareholders Agreement], this letter shall serve as notice to you that the **Company has chosen to exercise its option to purchase . . . the Company's common stock held by you**. . . . [P]lease return your stock certificate . . . and we will mark it cancelled.

(emphasis added). Thereafter, plaintiff repurchased defendant's shares of stock and "marked its stock ledger and other corporate records to reflect the fact that the shares it had repurchased" from defendant were cancelled. Defendant failed to return the cancelled stock certificate to plaintiff, as requested in the letter of 29 May 1998. On 30 May 2001, defendant informed plaintiff's CEO that the stock certificate had been destroyed, and agreed to sign an acknowledgment to that effect. However, when defendant met with plaintiff's CEO on 31 May 2001, defendant refused either to return the stock certificate or to sign a form acknowledging that it had been destroyed. On 31 May 2001 plaintiff commenced the present action against defendant for breach of the Shareholders Agreement and conversion of the stock certificate by service of a civil summons on defendant accompanied by an order extending the time for plaintiff to file its complaint. Plaintiff timely filed a complaint on 20 June 2001. In its complaint, plaintiff sought an injunction directing defendant's specific performance of the Shareholders Agreement, "namely to surrender to PharmaResearch the cancelled certificate or, in the alternative, to execute a written acknowledgment that the certificate was destroyed[.]"

Defendant filed an answer and counterclaims on 21 August 2001. Defendant asserted various defenses, and also made counterclaims against plaintiff for: (1) declaratory relief, seeking a judgment declaring him to be the owner of the cancelled shares of stock; (2) unfair and deceptive trade practices; (3) breach of contract, alleging that plaintiff breached the Shareholders Agreement by wrongfully terminating defendant's employment without good cause and failing to notify defendant of plaintiff's exercise of its repurchase option within 60 days of defendant's termination; (4) injunctive relief, seeking to bar plaintiff from acting as owner of the subject shares of stock, and; (5) constructive trust.

Plaintiff filed its answer to defendant's counterclaims on 23 October 2001. Plaintiff sought dismissal of defendant's claims for unfair and deceptive trade practices and imposition of a constructive

PHARMARESEARCH CORP. v. MASH

[163 N.C. App. 419 (2004)]

trust pursuant to N.C.R. Civ. P. 12(b)(6). This motion was granted on 24 January 2002 and, accordingly, these claims are not before this Court. Plaintiff also sought dismissal of defendant's other counterclaims, asserting, *inter alia*, that the claims were barred by the applicable statute of limitations.

On 14 June 2002 defendant filed a motion for summary judgment on his three remaining counterclaims, based on plaintiff's alleged failure to give defendant "written notice of its intention to exercise its option to purchase" defendant's shares of stock within 60 days of his termination for cause. On 17 June 2002 plaintiff filed a motion for summary judgment and again asserted that defendant's claims "are time-barred as indicated on the face of the Counterclaim." On 15 July 2002, the trial court entered an order granting plaintiff's motion for summary judgment on defendant's counterclaims and denying plaintiff's motion for summary judgment on its own claims. The court also denied defendant's summary judgment motion. The trial court's order does not state the legal basis for its rulings.

On 22 August 2002, plaintiff voluntarily dismissed its action against defendant under N.C.R. Civ. P. 41(a). Defendant then filed a motion, pursuant to N.C.R. Civ. P. 41(d), seeking an award of costs based on plaintiff's voluntary dismissal. Plaintiff also moved the trial court for an award of costs incurred in its defense of defendant's counterclaims. On 14 October 2002, the trial court granted plaintiff's motion for costs, but denied defendant's motion. Defendant appeals from the court's summary judgment order, and from its order awarding costs to plaintiff, and denying defendant's motion for costs.

## Standard of Review

Defendant appeals the trial court's entry of summary judgment. Under N.C.R. Civ. P. 56(c), summary judgment is properly granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." Thus, "the standard of review on appeal from summary judgment is whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law. Further, the evidence presented by the parties must be viewed in the light most favorable to the nonmovant." *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998) (citation omitted).

[1] Defendant presents several arguments on appeal regarding his counterclaims. We conclude, however, that the defendant's counterclaims were barred by the statute of limitations, and find this dispositive of the issues on appeal.

"Ordinarily, the question of whether a cause of action is barred by the statute of limitations is a mixed question of law and fact. However, when the bar is properly pleaded and the facts are admitted or are not in conflict, the question of whether the action is barred becomes one of law, and summary judgment is appropriate." *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985) (citing *Ports Authority v. Roofing Co.*, 294 N.C. 73, 240 S.E.2d 345 (1978), and *Little v. Rose*, 285 N.C. 724, 208 S.E.2d 666 (1974)). Further, when the party moving for summary judgment pleads the statute of limitations, "the burden is then placed upon the [non-movant] to offer a forecast of evidence showing that the action was instituted within the permissible period after the accrual of the cause of action." *Id.* In the instant case, we conclude that the facts relevant to whether the statute of limitations has expired on defendant's counterclaims are not in dispute.

Defendant's counterclaims were based on plaintiff's alleged breach of the Shareholders Agreement. Specifically, defendant asserted that plaintiff (1) terminated him without cause and (2) exercised its option to repurchase his shares of stock without properly notifying him within sixty days of his termination. N.C.G.S. § 1-52(1) (2003) establishes a three year statute of limitations for an action brought "[u]pon a contract, obligation or liability arising out of a contract, express or implied[.]" Moreover:

> A cause of action generally accrues and the statute of limitations begins to run as soon as the right to institute and maintain a suit arises. G.S. 1-15(a). The statute begins to run on the date the promise is broken. . . . [T]he right to institute an action commenced, . . . when defendant broke her promise or took action inconsistent with the promise[.]

*Penley v. Penley*, 314 N.C. 1, 20, 332 S.E.2d 51, 62-63 (1985) (citation omitted). Therefore, "[i]n a contract action . . . to determine if plaintiff's lawsuit is barred by the three year statute of limitations, this Court must first determine when the breach occurred which caused the cause of action to accrue." *Pearce v. Highway Patrol Vol. Pledge Committee*, 310 N.C. 445, 448, 312 S.E.2d 421, 424 (1984) (citation omitted).

Defendant argues that the statute of limitations did not begin to run until the unspecified date on which plaintiff physically marked its ledgers to reflect that defendant's shares of stock were cancelled. This argument is without merit. It has long been the law that:

"Where there is a breach of an agreement or the invasion of an agreement . . . the law infers some damage. . . . The accrual of the cause of action must therefore be reckoned from the time when the first injury was sustained. . . . When the right of the party is once violated, even in ever so small a degree, the injury . . . at once springs into existence and the cause of action is complete."

*Matthieu v. Gas Co.*, 269 N.C. 212, 215, 152 S.E.2d 336, 339 (1967) (quoting *Mast v. Sapp*, 140 N.C. 533, 537, 53 S.E. 350, 351 (1906)). *See also Fulp v. Fulp*, 264 N.C. 20, 26, 140 S.E.2d 708, 714 (1965) ("the statute of limitations began to run against plaintiff's claim . . . [when he issued] a flat repudiation of his agreement and [gave] notice to plaintiff that he intended to misappropriate the funds").

In the instant case, it is undisputed that on 1 June 1998 defendant received a letter from plaintiff informing defendant unequivocally (1) that he had been terminated for cause, and (2) that plaintiff was exercising its option to repurchase all of defendant's shares of company stock. Assuming, *arguendo*, that plaintiff's actions were a breach of the Shareholders Agreement, defendant's right to sue for breach of contract arose, **at the latest**, upon receipt of this letter. Accordingly, we conclude that the statute of limitations on defendant's counterclaims began to run no later than 1 June 1998, when this letter was received, and expired 1 June 2001. We further conclude that on 21 August 2001, when defendant filed his counterclaims, they were barred by the statute of limitation.

Defendant argues that plaintiff's claim and his counterclaims accrued on the same date, and thus that "the only way that Plaintiff's statute of limitations can prevail is if Plaintiff['s] . . . action was not timely filed." We disagree. The letter of 29 May 1998 simply requested defendant to return the stock certificate, and did not thereby give plaintiff a valid cause of action against defendant. The record evidence indicates that on 31 May 2001 defendant expressly refused to return the certificate or to sign an acknowledgment that it was destroyed. Based upon the evidence in the record, we conclude that plaintiff's cause of action against defendant for specific performance of the Shareholders Agreement arose on that date.

Defendant also argues that the filing of his counterclaims should be deemed to "relate back" to the date that plaintiff filed its original complaint. On this basis defendant argues that if his counterclaims "would have been timely when the action was commenced" the statute of limitations is then tolled indefinitely as to any counterclaims. We disagree.

In support of his "relation back" argument, defendant cites two cases. One of these, *Brumble v. Brown*, 71 N.C. 513 (1874), predates the adoption of the Rules of Civil Procedure by almost a century. In *Burcl v. Hospital*, 306 N.C. 214, 293 S.E.2d 85 (1982), the North Carolina Supreme Court held that if application of the Rules of Civil Procedure dictates a result different from that arrived at in a pre-rules case, the Rules should be applied:

> The Court of Appeals . . . relied on several . . . decisions of this Court made before the adoption of our present Rules of Civil Procedure. We conclude that present Rules 15 and 17(a) dictate a different result from that which . . . was reached by our cases decided before the enactment of these rules. We, therefore, reverse the Court of Appeals. . . .

*Burcl* at 217, 293 S.E.2d at 87. Accordingly, we first consider whether the pertinent statutes and Rules of Civil Procedure allow "relation back," or provide that a counterclaim is deemed to have been filed on the same date as the filing of the original action.

Under N.C.G.S. § 1-15(a) (2003), "[c]ivil actions can only be commenced within the periods prescribed in this Chapter, after the cause of action has accrued, except where in special cases a different limitation is prescribed by statute." Counterclaim procedure is governed by N.C.G.S. § 1A-1, Rule 13 (2003), which defines compulsory counterclaims, in relevant part, as claims "which at the time of serving the pleading the pleader has against any opposing party[.]" Thus, "a counterclaim is compulsory only [if] it is in existence at the time of serving the pleading against the opposing party[.]" *Faggart v. Biggers*, 18 N.C. App. 366, 370, 197 S.E.2d 75, 78 (1973). The absence of any exceptions in Rule 13 from otherwise applicable statutes of limitation stands in contrast to N.C.G.S. § 1A-1, Rule 15(c) (2003), which provides in pertinent part that "[a] claim asserted in an amended pleading is deemed to have been interposed at the time the claim in the original pleading was interposed[.]" Had the General Assembly intended for counterclaims to "relate back" to the date of filing of plaintiff's complaint, it could have so provided. *See Conover v.*

*Newton and Allman v. Newton and In re Annexation Ordinance,* 297 N.C. 506, 519, 256 S.E.2d 216, 224-25 (1979) ("If the General Assembly had intended to authorize [particular procedure] it would have so provided as it has explicitly done in [companion statute]. The absence of such statutory authorization, in light of the explicit provisions for it in the [other statute], is cogent evidence [of] the General Assembly['s] inten[t]"). We conclude that the pertinent Rule of Civil Procedure, Rule 13, does not support defendant's assertion that his counterclaim should be deemed to "relate back" to the date that plaintiff filed its original action. We also conclude that we should apply the North Carolina Rules of Civil Procedure, rather than relying on language in *Brumble*.[1]

Finally, a recent case from this Court also supports our conclusion that counterclaims do not "relate back" to the date the plaintiff's action was filed. In *State Farm Fire & Cas. Co. v. Darsie,* 161 N.C. App. 542, 589 S.E.2d 391 (2003), the plaintiff filed its complaint on 4 February 2000. This Court determined that the statute of limitations on defendant's counterclaims started running sometime within a year after the accident of 29 October 1996 and that when defendant filed her counterclaims on 10 May 2001, they were barred by the statute of limitations. However, calculating from the date that the Court determined defendant's cause of action accrued, the counterclaim was *not* time-barred when plaintiff filed its original action on 4 February 2000. Significantly, the Court did not apply relation back to "save" defendant's counterclaims.

We conclude that defendant's counterclaims were barred by the statute of limitations and that the trial court did not err by granting summary judgment to plaintiff on the counterclaims. This assignment of error is overruled.

---

Defendant also appeals from the trial court's order awarding costs to plaintiff, and denying defendant's motion for costs. Following the trial court's entry of summary judgment against defendant on his counterclaims, and plaintiff's subsequent dismissal of its original claim, both parties applied to the court for award of costs. Defendant's motion for costs under Rule 41(d) was denied. Plaintiff's motion for costs incurred in its defense against defendant's counterclaims was granted.

---

1. Defendant also cites *In re Gardner,* 20 N.C. App. 610, 202 S.E.2d 318 (1974). *In re Gardner,* however, bases its holding on *Brumble, id.,* which, as discussed above, was superceded by the adoption of our Rules of Civil Procedure.

**[2]** We first address the trial court's granting of plaintiff's motion for costs. Defendant's brief states that the trial court "erroneously granted plaintiff's motion." These four words constitute defendant's appellate argument in its entirety. Defendant has therefore failed to present any argument or authority in support of its contention, and does not assert any basis upon which we might conclude the trial court erred. Issues raised in defendant's brief, but not supported by argument or authority, are deemed abandoned. N.C.R. App. P. 28(b)(6). The trial court's award of costs to plaintiff is affirmed.

**[3]** We next turn to defendant's argument that the trial court erred by failing to award him costs under N.C.R. Civ. P. 41. Rule 41(d) provides in pertinent part that a plaintiff "who dismisses an action or claim under section (a) of this rule shall be taxed with the costs of the action unless the action was brought in forma pauperis." Plaintiff's counsel argued to the superior court, *inter alia*, that Rule 41(d) is inapplicable because plaintiff was precluded from voluntarily dismissing its claim once defendant filed a counterclaim. Because we affirm the trial court's order on alternative grounds, we have no occasion to address this argument.

In North Carolina "costs may be taxed solely on the basis of statutory authority . . . [and] courts have no power to adjudge costs against anyone on mere equitable or moral grounds." *City of Charlotte v. McNeely*, 281 N.C. 684, 691, 190 S.E.2d 179, 185 (1972) (internal quotations omitted). This Court recently addressed the current status of our jurisprudence concerning costs in general, *DOT v. Charlotte Area Manufactured Hous. Inc.*, 160 N.C. App. 461, 586 S.E.2d 780 (2003), and costs in the Rule 41 context, *Cosentino v. Weeks*, 160 N.C. App. 511, 586 S.E.2d 787 (2003).

> Rule 41(d) requires an award of costs, upon motion by a defendant, where a plaintiff takes a voluntary dismissal[.] . . . [W]here Rule 41(d) applies, . . . the discretion to award costs, is inapplicable because Rule 41(d) mandates that costs 'shall be awarded.'

*Cosentino*, 160 N.C. App. at 518, 586 S.E.2d at 790. This Court has held that "[t]he 'costs' to be taxed under . . . Rule 41(d) against a plaintiff who dismisses an action under . . . Rule 41(a), means the costs recoverable in civil actions as delineated in [N.C.G.S.] § 7A-305(d)[.]" *Sealy v. Grine*, 115 N.C. App. 343, 347, 444 S.E.2d 632, 635 (1994) (citing *McNeely*, 281 N.C. at 691, 190 S.E.2d at 185). Moreover, consistent with the Supreme Court's holding in *McNeely* this Court has held that

expenses not listed as costs in the North Carolina General Statutes will not be accommodated. *Charlotte Manufactured Housing, Inc.,* 160 N.C. App. at 472, 586 S.E.2d at 786; *accord Cosentino,* 160 N.C. App. at 518, 586 S.E.2d at 791.

In the instant case, plaintiff filed a voluntary dismissal without prejudice pursuant to Rule 41(a). Defendant's motion for costs pursuant to Rule 41(d) referenced two items which are not enumerated in G.S. § 7A-305(d). Based on the principles set forth in *McNeely, Sealy, Charlotte Area Manufactured Housing,* and *Cosentino,* the trial court did not err in denying defendant's motion to tax these expenses against the plaintiff.

The trial court's orders entering summary judgment, awarding costs to plaintiff, and denying defendant's motion for costs are affirmed.

Affirmed.

Chief Judge MARTIN and Judge McGEE concur.