Deluca v. River Bluff Holdings II, LLC, 2015 NCBC 11.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION |
| COUNTY OF BRUNSWICK | 13 CVS 783 |

THOMAS DELUCA and
ANTONIA DELUCA,

       Plaintiffs,

   v.

RIVER BLUFF HOLDINGS II, LLC;
THOMAS B. HOWELL; EDWARD
KENNEDY;
JAMES J. MANDRIN; JOSEPH H.
STILWELL; H. DAVID SWAIN; and
DOUGLASS S. TALBOT,

       Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER**

{1}     THIS MATTER is before the Court on Plaintiffs' Motion to Amend Complaint ("Motion to Amend"), pursuant to Rule 15(a) of the North Carolina Rules of Civil Procedure ("Rule(s)") and Defendants' First and Second Motions to Dismiss, pursuant to Rule 12(b)(6) ("Motions").[1]  For the reasons stated below, the Motion to Amend Complaint is GRANTED, the First Motion to Dismiss is DENIED as moot, and the Second Motion to Dismiss is GRANTED in part and DENIED in part. To simplify the pleadings, Plaintiffs is directed to file a second amended complaint limited to the claim that survives this Order, to which Defendants shall respond.

     *Speaks Law Firm, P.C. by R. Clarke Speaks and Ashley Smith for Plaintiffs.*

     *Nexsen Pruet, PLLC by David S. Pokela for Defendants.*

Gale, Chief Judge.

---

[1] Defendants moved to dismiss the initial Complaint, challenged the Motion to Amend on futility grounds, and incorporated the First Motion to Dismiss in their Second Motion to Dismiss, which presents challenges to the Amended Complaint should the Court allow its filing.

## I.    PARTIES

{2}    Plaintiffs Thomas and Antonia Deluca, a married couple, are citizens and residents of Brunswick County, North Carolina.  In 2006, the Delucas purchased undeveloped property at The Bluffs on the Cape Fear subdivision ("The Bluffs") in Brunswick County.

{3}    Defendant River Bluff Holdings II, LLC ("RBH2") is a North Carolina limited liability company with a principal place of business and registered office in New Hanover County, North Carolina.

{4}    Defendants Thomas B. Howell, Edward Kennedy, and James Mandrin are residents of Anne Arundel County, Maryland.

{5}    Defendants Joseph Stilwell and David Swain are residents of New Hanover County, North Carolina.

{6}    Defendant Douglass Talbot is a resident of Moore County, North Carolina.

{7}    Howell, Kennedy, Mandrin, Stilwell, Swain, and Talbot ("Individual Defendants") are all officers of RBH2.

## II.    PROCEDURAL BACKGROUND

{8}    Plaintiffs filed suit in Brunswick County on May 3, 2013.  On June 3, 2013, the case was designated a mandatory complex business case by Order of the Chief Justice and assigned to the undersigned on June 3, 2013.  Defendants filed their original Motion to Dismiss on July 3, 2013 ("First Motion to Dismiss").  After full briefing, the Court heard argument on that motion in Brunswick County on November 4, 2013, at which time the Court deferred ruling, permitted Plaintiffs to file a Proposed Amended Complaint, and provided that Defendants could oppose the Amended Complaint by incorporating the First Motion to Dismiss into a second motion ("Second Motion to Dismiss") should the Court allow the amendment over Defendants' futility objections.

{9}     In accord with the Court's direction, on December 6, 2013, Plaintiffs moved to amend their Complaint and filed the Proposed Amended Complaint which alleges claims for: (1) breach of contract; (2) violation of the Interstate Land Sales Full Disclosure Act ("ILSA claim"); (3) violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"); (4) negligent misrepresentation; (5) common law fraud; and (6) unjust enrichment.  Defendants filed their Second Motion to Dismiss on January 31, 2014, opposing the amendment based on futility and moving to dismiss for failure to state a claim on which relief can be granted.

{10}     After full briefing, the Court heard oral argument for both Motions on July 10, 2014.  The matter is ripe for disposition.

### III.    FACTUAL BACKGROUND

{11}     The Court does not make findings of fact in connection with the Motions, as a motion to amend and a motion to dismiss do "not present the merits, but only whether the merits may be reached." *Concrete Serv. Corp. v. Investors Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986).  As the Court will allow the Motion to Amend, it assumes the facts alleged in the Proposed Amended Complaint are true and makes inferences in Plaintiffs' favor.  In so doing, the Court is not bound to Plaintiffs' legal conclusions asserted in the Proposed Amended Complaint.

{12}     In 2006, RBH2 sold the Delucas two lots of land in The Bluffs, a then-undeveloped subdivision constituting 600 acres of land located in Brunswick County, North Carolina.  The Bluffs was promoted as a luxury resort-style community that, once completed, would have roads, utilities, and the following amenities: a club house, pool, tennis court, waterfront park, and community beach house.  Section 10 of the contracts governing the sale of each lot ("Purchase Contract(s)") provides that RBH2

> will *ensure the completion*, subject to Section 11 hereof, of the following services or facilities:
>
>   (a) Paved roads have or will be extended to the above-described Property line and are to be maintained by the association;

(b) Electric service lines have been or will be extended to the above-described Property line and are to be maintained by the Association;

(c) Telephone lines have been or will be extended to the above-described [property] line;

(d) Sewage collection and water lines have been or will be extended to the Property line;

(e) The recreational facilities to be installed by seller include a clubhouse, pool, tennis court, waterfront park, and community beach house.[2] Seller does not guarantee any other proposed recreational facilities within or in the vicinity of the Community. All of the recreational facilities will be owned by The Bluffs on the Cape Fear Property Owners Association, Inc.

(Br. Supp. First Mot. Dismiss Exs. A, B ("Purchase Contracts") § 10 (emphasis added).)

{13} Section 11 states, "[t]he only representations made by Seller with respect to the completion of roads, sewer, water, electric, telephone service and recreational facilities are as set forth in Section 10 hereof and no other representations regarding the same have been made by Seller or relied upon by Purchaser." (Purchase Contracts § 11.) The Purchase Contracts also contain a merger clause which disclaims all prior understandings, agreements, and representations between RBH2 and the Delucas regarding the sale.

{14} To date, certain of those amenities and utilities have not been completed. Plaintiffs' claims center around their contention that both they and RBH2 understood that RBH2's obligation to "ensure completion" imposed an obligation to "make certain that the services and facilities described in Paragraph 10 would be completed within a reasonable period of time following the date of the contract." (Pr. Am. Compl. ¶ 178.) The Purchase Contracts did not provide the day by which Defendants were obligated to fulfill their obligation to complete or ensure completion. Therefore, Defendants had a reasonable time to "ensure completion." *See Fletcher v. Jones*, 314 N.C. 389, 396, 333 S.E.2d 731, 736 (1985). Defendants disagree that they were obligated to actually complete the facilities and services, so

---

[2] The Purchase Contract for Lot 48 does not "ensure the completion" of a waterfront park or a community beach house. (Lot 48 Purchase Contract § 10.)

long as they "ensured" their ultimate completion by, for example, posting bonds with the county, as RBH2 has done. (Br. Opp'n Mot. Leave Amend Supp. Mot. Dismiss ("Defs. Br. Supp. Mot Dismiss") 8.)

{15} Almost one year after executing the Purchase Contracts, around October 2007, RBH2 approached the Delucas about sharing costs to build a pier, floating dock, and boat lift on the Delucas' property in exchange for which the Delucas would grant RBH2 an easement and lease to use the dock. The Delucas agreed and contributed approximately $12,000 for the construction. (Pr. Am. Compl. Exs. 7–9.)

{16} The Delucas and RBH2 executed the last purchase contract in November 2006. Between 2009 and 2011, Plaintiffs allege that Defendants made a series of misrepresentations regarding the construction progress and their own understandings of RBH2's obligations under the Purchase Contracts. (Pr. Am. Compl. ¶¶ 108–48.) These included reports that Defendants believed RBH2 would "still proceed with the building program as planned." (Pr. Am. Compl. ¶ 135, Ex. 13.) Plaintiffs claim that they did not earlier pursue a lawsuit against Defendants or attempt to sell their lots because of these alleged misrepresentations.

{17} Plaintiffs also assert that the Individual Defendants dominated and controlled RBH2 and used that control to "falsely represent to the Delucas that RBH2 was financially capable of completing the remaining infrastructure and promised amenities at [T]he Bluffs." (Pr. Am. Compl. ¶ 196.) Seeking to support imposition of individual liability, Plaintiffs point to instances in which various Individual Defendants offered to dispose of RBH2's corporate assets in exchange for a loan, declined suggestions that the constructed amenities be sold or subleased to raise capital, offered to personally guarantee loans to RBH2, and referred to themselves as partners, despite RBH2's clear registration as a limited liability company.

## IV.    STANDARD OF REVIEW

{18}    The appropriate inquiry on a motion to dismiss pursuant to Rule 12(b)(6) is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Crouse v. Mineo*, 189 N.C. App. 232, 237, 658 S.E.2d 33, 36 (2008) (quoting *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987)).  A motion to dismiss may be granted if the complaint reveals the absence of facts required to make out a claim for relief or if the complaint reveals some fact that necessarily defeats the claim.  *Wood v. Guilford Cnty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002).  "When documents are attached to and incorporated into a complaint, they become part of the complaint and may be considered in connection with a Rule 12(b)(6) motion without converting it into a motion for summary judgment." *Schlieper v. Johnson*, 195 N.C. App. 257, 261, 672 S.E.2d 548, 551 (2009).  Additionally, a trial court may properly consider a contract that is the subject matter of the complaint, even if the plaintiff did not attach it to the complaint.  *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001).

{19}    A trial court shall freely grant leave to amend a complaint when justice so requires.  N.C. R. Civ. P. 15(a).  An amendment may be denied where there is "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice, and futility of the amendment." *Coffey v. Coffey*, 94 N.C. App. 717, 722, 381 S.E.2d 467, 471 (1989).  In reviewing a proposed amendment for futility, the trial court may review the entire record.  *N.C. Council of Churches v. State*, 120 N.C. App. 84, 93, 461 SS.E.2d 354, 360 (1995), *aff'd*, 343 N.C. 117, 468 S.E.2d 58 (1996) ("When an amendment would be futile in light of the propriety of summary judgment on a plaintiff's claim, it is not an abuse of discretion for the trial court to deny the amendment."); *see also, e.g., Coffey v. Savers Life Ins. Co.*, No. COA01-741-2, 2003 N.C. App. Lexis 702, at *4 (N.C. Ct. App.  Apr. 15, 2003) (reviewing entire record in deciding motion to amend).

## V.    ANALYSIS

### A. <u>Plaintiffs' Motion to Amend Complaint is Granted</u>

{20}    The Court may, but is not required to, deny Plaintiffs' Motion to Amend based on futility. Defendants' futility argument is essentially that the Proposed Amended Complaint would not survive a Rule 12(b)(6) motion to dismiss. The Court elects to allow the Proposed Amended Complaint and evaluate its validity on Defendants' Second Motion to Dismiss.  Plaintiffs' Motion to Amend is therefore GRANTED.  The First Motion to Dismiss is DENIED AS MOOT.  The Court now proceeds to address the Second Motion to Dismiss as directed to the Amended Complaint, which shall be deemed filed as of the date of this Order without need for further service.

### B. <u>Plaintiffs' Breach of Contract Claim Against RBH2 Survives the Present Motions</u>

{21}    Plaintiffs argue that RBH2 breached the Purchase Contracts because it failed to "ensure completion" of the promised services and facilities within a reasonable period of time.  Plaintiffs assert that the term "ensure completion" meant only that Defendant RBH2 "was obligated to make certain that the services and facilities . . . would be completed."  (Pr. Am. Compl. ¶ 162 (emphasis omitted).) RBH2 further contends that this cause of action fails because the statute of limitations has run on the contract claim but that, in any case, it adequately "ensured completion" of the promised services and facilities within a reasonable time.  Plaintiffs counter that RBH2 should be equitably estopped from using the statute of limitations as a defense, and that they neither completed nor "ensured completion" of the promised services and facilities.

#### 1. <u>As to the Breach of Contract Claim, Plaintiffs' Equitable Estoppel Argument that the Statute of Limitations Was Tolled Cannot Be Resolved Upon the Second Motion to Dismiss</u>

{22}    Plaintiffs' contract claim is governed by a three-year statute of limitations period.  N.C. Gen. Stat. § 1-52(1) (2014).  Typically, a contract claim

begins to accrue when the breach occurs. *PharmaResearch Corp. v. Mash*, 163 N.C. App. 419, 424, 594 S.E.2d 148, 152 (2004). However, "equity will deny the right to assert [a statute of limitations] defense when delay has been induced by acts, representations, or conduct, the repudiation of which would amount to a breach of good faith." *Watkins v. Cent. Motor Lines, Inc.* 279 N.C. 132, 139, 181 S.E.2d 588, 593 (1971) (quoting *Nowell v. Great Atl. & Pac. Tea Co.*, 250 N.C. 575, 579, 108 S.E.2d 889, 891 (1959)). In this case, the breach occurred, if at all, when Defendants failed to "ensure completion" of the promised services and amenities after a "reasonable time." Such a breach would occur after a "reasonable time" from the signing of the contract or in July 2013, when Defendants allegedly repudiated this obligation. At this stage, neither date has been or can be precisely determined. Even if the breach first occurred more than three years before the Delucas initiated this action, Plaintiffs claim that RBH2 should be equitably estopped from asserting the statute of limitations as a defense to this claim due to its own misrepresentations.

{23} The last Purchase Contract was executed in November 2006, significantly more than three years before this action was filed. However, the date by which Defendants were required to "ensure completion," or under their own theory, "ensured completion," remains uncertain. As to the contract claim, the questions are whether any such failure occurred prior to May 3, 2010, and if so, whether the statute was tolled for any period after that date.

{24} "Equitable estoppel arises when an individual by his acts, representations, admissions or silence, when he has a duty to speak, intentionally or through culpable negligence," induces another to believe in and rely upon the existence of certain facts to his detriment. *Miller v. Talton*, 112 N.C. App. 484, 488, 435 S.E.2d 793, 797 (1993). To estop the use of the statute of limitations against them, Plaintiffs must allege "(1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts." *Robinson v.*

*Bridgestone/Firestone N.A. Tire, LLC*, 209 N.C. App. 310, 319, 703 S.E.2d 883, 889 (2011). Additionally, Plaintiffs must show they lacked knowledge and the means of ascertaining the real facts and rightfully relied on Defendants' conduct to their detriment. *Id.*; *Johnson Neurological Clinic, Inc. v. Kirkman*, 121 N.C. App. 326, 332, 465 S.E.2d 32, 35 (1996).

{25} For equitable estoppel to toll the statute of limitations, a plaintiff must plead facts with particularity and demonstrate that the defendant's representations delayed it from filing suit. *Duke Univ. v. St. Paul Mercury Ins. Co.*, 95 N.C. App. 663, 673, 384 S.E.2d 26, 42 (1989); *see also* N.C. R. Civ. P. 8(c).

{26} As to the estoppel argument, Plaintiffs make several references to RHB2's alleged misrepresentations between 2010 and 2011[3] that they contend should toll the statute of limitations for their contract claim because the misrepresentations induced them to forego pursuing legal action. More specifically, Plaintiffs allege that in September 2010, responding to Mr. Deluca's suggestion that RBH2 either sell or sublease the Beach Clubhouse at Oak Island to finance the completion of basic services, Talbot stated that RBH2 was "going to overcome [its] existing situation within the next 12 months," presumably referring to cash flow issues. (Pr. Am. Compl. Ex. 10.) Talbot added that maintaining the Beach Clubhouse would be "very helpful in the sales process and [would] allow [RBH2] to gradually increase [its] price," because the amenity package was "critical to all owners." (Pr. Am. Compl. Ex. 10.) Talbot concluded that he would work to maintain the Beach Clubhouse until RBH2 was "totally desperate with no alternatives." From these statements, the Delucas concluded that RBH2's finances

---

[3] In the Amended Complaint, Plaintiffs contend that these representations began in 2009. However, the Amended Complaint only specifically refers to representations beginning in 2010. General allegations that misrepresentations occurred are not sufficient. *Yancey v. Watkins*, 2 N.C. App. 672, 676, 163 S.E. 625, 628 (1968) ("It is fairly clear that a [party] must plead the doctrine of [equitable] estoppel with particularity . . . .") At argument, Plaintiffs' counsel used a PowerPoint presentation which included screenshots of various newsletters RBH2 distributed to its property owners between 2009 and 2011. Those documents were neither specifically referenced nor included in the Amended Complaint. The Court does not presently assume that Plaintiffs actually received those newsletters from RBH2.

"were not so desperate as to render the completion of the promised services unlikely." (Pr. Am. Compl. ¶ 118, Ex. 10.)

{27} On November 9, 2010, the Delucas met with RBH2's agents, Stilwell, Talbot, and Swain, regarding the lack of progress at The Bluffs, specifically concerning the unfinished roads. (Pr. Am. Compl. ¶¶ 121–22.) Stilwell, Talbot, and Swain requested that the Delucas lend them the money to finish the roads to two lots and to complete utilities to the Delucas' lot. (Pr. Am. Compl. ¶¶ 123–24.) At this time, RBH2's agents admitted that RBH2 and The Bluffs "were having severe financial shortfalls and could not complete the promised infrastructure or amenities as previously described." (Pr. Am. Compl. ¶ 133.) Mr. Deluca responded that "had RBH2 been a supplier for his company, he would have fired them." (Pr. Am. Compl. ¶ 132.) Plaintiffs' counsel contends that the statute of limitations first began to accrue at this meeting because it was only then that Plaintiffs could conclude that Defendants had not and could not complete the promised services and amenities governed by Section 10 of the Purchase Contracts. Plaintiffs then contend that any statute of limitations defense should be measured from November 9, 2010.

{28} The Amended Complaint includes two alleged misrepresentations occurring after that date and are, therefore, not relevant to whether Defendants' representations induced Plaintiffs to withhold filing suit. On December 21, 2010, Talbot reported to the Delucas that no progress had been made since their November meeting, but that he still "believe[d] that [RBH2] will proceed with the building program has [sic] planned." (Pr. Am. Compl. ¶ 135, Ex. 13.) The next month, the Delucas again met with Talbot and Swain, who gave "renewed assurances" that things would progress as described, but gave no dates for completion of utilities or amenities. (Pr. Am. Compl. ¶ 138.)

{29} At oral argument, Plaintiffs' counsel conceded that, as of November 9, 2010, the Delucas were on notice that plans to complete utilities and amenities had halted. Therefore, the Delucas could not have "rightfully" relied on such representations to refrain from filing suit. *See Johnson Neurological*, 121 N.C. App. at 332, 465 S.E.2d at 35. Whether (1) Plaintiffs rightfully and detrimentally relied

on any representation *prior to* November 9, 2010 or had the means to discover the truth prior to that date and (2) a reasonable time had passed by November 9, 2010 such that RBH2 was required to perform, remain questions of fact. The Court does not now rule as to whether there was such reliance and, if so, whether such reliance was reasonable.

{30} In sum, the Court cannot presently determine (1) the precise date of breach, and therefore whether three years has passed between when the breach occurred and when the Delucas initiated this action, and (2) if so, whether Plaintiffs can employ the equitable estoppel doctrine to prevent Defendants from raising this defense. Accordingly, to the extent it rests upon a statute of limitations defense to the contract claims, Defendants' Second Motion to Dismiss is DENIED without prejudice to reconsidering the limitations defense on a more developed record.

### 2. Plaintiffs Adequately State a Claim that RBH2 Failed to "Ensure Completion" of the Promised Services and Amenities

{31} RBH2 contends the Court should dismiss the claim for breach of Section 10 of the Purchase Contracts because it has adequately "ensured completion" of the roads, sewage, and water lines, by posting bonds with the county. (Defs. Br. Supp. Mot Dismiss 8.) As to RBH2's obligation with regards to the telephone lines and electric service lines, RBH2 proposes that arranging with "the applicable . . . company" to install the lines would have fulfilled this obligation. (Defs. Br. Supp. Mot. Dismiss 8.) RBH2 asserts that it could have fulfilled its obligation to ensure the recreational facilities' completion by "obtaining construction plans and permits, among other possible things." (Defs. Br. Supp. Mot. Dismiss 8.)

{32} Even so, on the present record, and at the Rule 12(b)(6) stage, the Court cannot conclude that RBH2 has actually undertaken each of these items even if the Court ultimately accepts RBH2's construction of the term "ensure completion." Plaintiffs' contract claim against RBH2 therefore survives Defendants' Second Motion to Dismiss.

C. **Plaintiffs' Claim for Violation of the Interstate Land Sales Full Disclosure Act Is Barred by the Statute of Limitations**

{33}    Plaintiffs allege that Defendants violated ILSA, which requires that if a subdivision developer represents, by means of interstate commerce or mail, "that roads, sewers, water, gas, or electric service, or recreational amenities will be provided or completed by the developer," the contract of sale must stipulate "that such services will be provided or completed."  15 U.S.C. § 1703(a)(2)(D) (2014).

{34}    Plaintiffs assert that, at open houses and in RBH2's marketing materials, it represented to the Delucas and other potential purchasers that it would complete all infrastructure.  (Pr. Am. Compl. ¶¶ 31, 41.)  Plaintiffs urge that Defendants did not satisfy ILSA because "'[e]nsuring completion' of roads, sewers, water, gas, or electric service, or recreational amenities is insufficient . . . to meet the requirement of stipulating that such services or facilities will be provided or completed." (Pr. Am. Compl. ¶ 233.)  In their Amended Complaint, Plaintiffs argue that they did not discover Defendants' ILSA violation until July 2013, when Defendants allegedly refuted Plaintiffs' contract claim on the basis that they had "ensured completion."

{35}    The ILSA claim is facially time-barred.  To recover for a violation of § 1703(a)(2)(D), a plaintiff must bring the action within "three years after the date of signing of the contract of sale." 15 U.S.C. § 1711(a)(1) (2014). The Purchase Contracts were signed in June and November of 2006, six-and-a-half years prior to instituting this lawsuit.  Plaintiffs' protest that they did not discover the discrepancy until July 2013 is unavailing, as § 1711(a)(1) does not have a discovery rule. *Id.*

{36}    The doctrine of equitable estoppel potentially prevents a party from asserting a limitations defense to certain ILSA claims that are not at issue here. *See Bomba v. W. L. Belvidere, Inc.*, 579 F.2d 1067, 1070–71 (7th Cir. 1978) (applying equitable estoppel to claims falling under § 1711(a)(2)'s statute of limitations).  The Court is not aware, however, of any case in which equitable

estoppel has been successfully asserted to prevent dismissal grounded on the statute of limitations for an ILSA violation subject to § 1711(a)(1).

{37}   Even assuming an estoppel theory were to apply, the Court concludes that it would not save Plaintiffs' ILSA claim.  Any ILSA failure clearly occurred at the execution of the Purchase Contracts and the claim begins to accrue on that date.  Plaintiffs do not allege any specific post-contractual misrepresentations occurring within the limitations period.

{38}   The ILSA claim is therefore time-barred. *See Cook v. Deltona Corp.*, 753 F.2d 1552, 1563 (11th Cir. 1985) (holding ILSA claims were time-barred because misrepresentations alleged as basis for equitable estoppel did not commence until after limitations period already expired).

{39}   Plaintiffs' claim for violation of ISLA is DISMISSED.

## D. Plaintiffs' Claims for Fraud and Negligent Misrepresentation Are Dismissed

{40}   To state a claim for fraud, a plaintiff must allege "(1) [a f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974).  The requirements for stating a negligent misrepresentation claim are similar: "(1) a party justifiably relies, (2) to his detriment, (3) on information prepared without reasonable care, (4) by one who owed the relying party a duty of care." *Fazzari v. Infinity Partners, LLC*, ___ N.C. App. ___, 762 S.E.2d 237, 241 (2014) (quoting *Walker v. Town of Stoneville*, 211 N.C. App. 24, 30, 71 S.E.2d 239, 244 (2011)).  Both causes of action require some showing that the claimant suffered an injury as a result of the misrepresentation.  Allegations of fraud and negligent misrepresentation must be stated with particularity.  N.C. R. Civ. P. 9(b); *BDM Invs. v. Lenhil, Inc.*, 2012 NCBC LEXIS 7, at *56 (N.C. Super. Ct. Jan. 18, 2012) (applying Rule 9(b) to pending negligent misrepresentation claims); *Breedon v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 199 (M.D.N.C. 1997) (holding particularity requirements of Rule 9(b) apply to negligent misrepresentation to

"more accurately comport[] with the basis behind the rule and its original rationale"). To do so, one must allege (1) "the time, place and content" of the misrepresentation, (2) the "identity of the person making the representation" and (3) "what was obtained as a result of the fraudulent acts or representations." *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981). Additionally, the representation must be definite and specific, more than "mere puffing, guesses, or assertions of opinions" but actual representations of material facts. *Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 17, 418 S.E.2d 648, 659 (1992).

{41} In support of their fraud claims, Plaintiffs allege that Defendants made several inaccurate post-contractual representations to Plaintiffs regarding the progress of the amenities and services and RBH2's financial ability to construct them. These are the same misrepresentations the Court outlined in Section V(B)(1) of this Order.

{42} Where a false or negligent misrepresentation does not proximately cause the injury complained of, dismissal is appropriate. *See Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 40, 626 S.E.2d 315, 323 (2006). Plaintiffs assert three sources of injury that they contend proximately resulted from Defendants' misrepresentations: (1) temporary forbearance of legal action; (2) failing to resell their lots or otherwise failing to mitigate their damages; and (3) monies paid to an architect to design the Delucas' home.

{43} Plaintiffs' temporary forbearance from legal action is insufficient to sustain a fraud claim in this case. This is duplicative of Plaintiffs' equitable estoppel claim, which is not an independent cause of action. *See Rice v. Vitalink Pharm. Servs., Inc.*, 124 F. Supp. 2d 343, 350 (W.D.N.C. 2000). The Court has allowed the breach of contract claim to survive under the estoppel theory. There is no legal basis for further recovery on this claim.

{44} As to Plaintiffs' contention that they did not take advantage of opportunities to resell their lot in reliance on Defendants' misrepresentations, Plaintiffs rely on mere general allegations without sufficient particularity. *See Int'l Designer Transitions, Inc. v. Faus Grp., Inc.*, 663 F. Supp. 2d 432, 446 (M.D.N.C

2009) (applying North Carolina law to dismiss fraud claim for failure to plead exact harm suffered); *see also Terry*, 302 N.C. at 85, 273 S.E.2d at 678 (turning to federal law for guidance on "particularity" standard from "apposite" case law interpreting federal rule). In *International Designer*, the plaintiff alleged that based on the defendant's misrepresentation that he would "take care" of the plaintiff's inventory or merge with the plaintiff, the plaintiff "agreed to order extra inventory and cancel or change purchase orders and was damage[d] as a result of . . . ordering inventory that [the defendant] ultimately refused to purchase." *Int'l Designer*, 663 F. Supp. 2d at 446 (first alteration in original). The court determined that the pleading was inadequate because the plaintiff "failed to point to evidence of a single instance where it actually modified or cancelled" an order, and thus failed to allege that it was damaged by the fraudulent misrepresentation. *Id.* In this case, Plaintiffs similarly fail to point to evidence of any specific opportunity to resell that they forewent. Therefore, Plaintiffs did not plead a sufficiently particular injury based on foregoing opportunities to resell.

{45} Finally, Plaintiffs contend that Defendants' misrepresentations proximately caused at least $30,000 of Plaintiffs' damages, the amount Plaintiffs paid to their architect for plans for a home to be built on the lots. (Pr. Am. Compl. ¶ 104.) However, Plaintiffs' own allegation belies this argument. In their Amended Complaint, Plaintiffs assert that "[i]n making such payments[ to the architect], the Delucas relied on the existence of RBH2's contractual obligation to complete the infrastructure and amenities within a reasonable period of time." (Pr. Am. Comp. ¶ 105.) In other words, the Delucas paid their architect in reliance on the Purchase Contracts, not on Defendants' representations as to the progress of the amenities and services and RBH2's financial ability to construct them. There is no actionable fraud claim. The Court does not presently rule whether the monies paid can be recovered as consequential damages for the breach of contract claim alleged.

{46} In sum, Plaintiffs have not sufficiently alleged any actionable injury resulting from Defendants' alleged misrepresentations, and the claims for fraud and negligent misrepresentation are DISMISSED.

## E. Plaintiffs' UDTPA Claim Fails

{47} To state a claim under section 75-1.1, a plaintiff must allege (1) that the defendant committed an unfair or deceptive act or practice (2) in or affecting commerce, and (3) that the plaintiff was injured as a result. *Phelps-Dickson Builders, LLC v. Amerimann Partners*, 172 N.C. App. 427, 439, 617 S.E.2d 664, 671 (2005). Where a UDTPA claim is based on misrepresentation, the claimant is required to show reasonable and actual reliance on the misrepresentation. *Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 89–90, 747 S.E.2d 220, 227 (2013).

{48} A breach of contract, even if intentional, does not constitute an unfair or deceptive act absent aggravating circumstances, such as deceptive conduct by the breaching party made with intent to deceive and which has a natural tendency to injure the other. *Cullen v. Valley Forge Life Ins. Co.*, 161 N.C. App. 570, 578, 589 S.E.2d 423, 430 (2003); *Pan-Am. Prods. & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F. Supp. 2d 664, 700 (M.D.N.C. 2011). In determining whether a particular act is deceptive, such that it converts a breach of contract claim into a UDTPA claim, "its effect on the average consumer is considered." *Becker v. Graber Builders, Inc.*, 149 N.C. App. 787, 794, 561 S.E.2d 905, 911 (2002).

{49} Plaintiffs allege RBH2 engaged in the following unfair and deceptive conduct: (a) providing misleading updates regarding the progress of the amenities, roads, and utilities; (b) misrepresenting that Phase I lots sold out in one day; (c) providing promotional materials for The Bluffs "with the intent that the Delucas to [sic] rely on these representations [but] . . . creating a contract that disclaiming [sic] any representations or reliance on the same;" (d) using said disclaimer to get a price based on the promotional materials, but obligating themselves only to build the items without regard to size, quality, or appearance; (e) assuring the Delucas it would complete the infrastructure and amenities and then later changing its position to be (1) that RBH2 was only obligated to "ensure completion" of the infrastructure and amenities, not to actually complete them and (2) that the Delucas unduly delayed in bringing a lawsuit against RBH2 based on the contract. (Pr. Am. Compl. ¶ 240(a)–(f).)

{50}     Items (a) through (c) are premised on Plaintiffs' fraud claim, which the Court has rejected, in part for lack of reasonable reliance. *See Bumpers*, 367 N.C. at 89–90, 747 S.E.2d at 227 (requiring reasonable reliance in fraud-based UDTPA claims). To the extent Plaintiffs reasonably relied on Talbot's September 2010 representation that RBH2 would overcome its financial difficulties (Pr. Am. Compl. Ex. 10), such reliance would have only caused Plaintiffs to delay filing suit and therefore did not cause actionable damage. *Akzo Nobel Coatings, Inc. v. Rogers*, 2011 NCBC LEXIS 42, at *64 (N.C. Super. Ct. Nov. 3, 2011) ("[T]emporary forbearance of legal action is not . . . sufficient to establish the actual injury requirement of Chapter 75."). Consequently, Items (a) through (c) are inadequate to state a UDTPA claim. Items (d) and (e) apparently arise from the alleged breach of contract, but there are no adequate allegations of aggravated rising to a Chapter 75 claim. To the extent they could be characterized as deception-based allegations, they fail for the same reasons the fraud claims fail.

{51}     In sum, Plaintiffs have not adequately stated a claim for violation of the UDTPA. According, Plaintiffs' claim under section 75-1.1 is DISMISSED.

## F. Plaintiffs Have Not Stated a Claim for Unjust Enrichment

{52}     Plaintiffs allege that Defendants received an unfair benefit "at a fraction of the cost" from the use of Plaintiffs' boat dock. (Pr. Am. Compl. ¶ 271.) Because Plaintiffs and RBH2 split the cost of the boat dock's construction, and because RBH2 was the only beneficiary of the boat dock, Plaintiffs now seek "restitution and disgorgement of all profits realized by Defendants" as a result of their inequitable enrichment. (Pr. Am. Compl. ¶ 271.)

{53}     To recover on a claim for unjust enrichment, a party must prove: (1) that it conferred a benefit on the defendant; (2) that the defendant consciously accepted the benefit; and (3) that the plaintiff did not confer the benefit gratuitously or officiously. *Se. Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002). Defendants urge that because the Access Easement and Lease

Agreement governs the cost and use of the pier, floating dock, and boat lift, no unjust enrichment claim separately lies.

{54} Where a party has entered into an express contract concerning the subject matter of the dispute, the party is precluded from equitable recovery in *quantum meruit. Ron Medlin Constr. v. Harris*, 364 N.C. 577, 585–86, 704 S.E.2d 486, 492 (2010). Here, Plaintiffs do not challenge the validity of the contract, but seek to impose liability on Defendants for benefitting from the dock, which is precisely what the Access Easement and Lease Agreement contemplated. A valid contract governs the subject matter of the unjust enrichment claim. Accordingly, that claim is DISMISSED.

## G. Plaintiffs Have Not Alleged Adequate Facts to Pierce the Corporate Veil Necessary to Support Claims Against the Individual Defendants

{55} In their Amended Complaint, Plaintiffs ask the Court to pierce RBH2's corporate veil to hold the Individual Defendants accountable for the LLC's representations that it was "financially capable of completing the remaining infrastructure and promised amenities at the Bluffs as advertised, and that it was in the process of doing so between 2009 and 2011," which proximately caused the Delucas to forego attempts to resell their lots or pursue legal remedies. (Pr. Am. Compl. ¶ 196.) To pierce the corporate veil, a plaintiff must first plead the following elements:

(1) [c]ontrol, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

(2) [s]uch control must have been used by the defendant to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and

(3) [t]he aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Fischer Inv. Capital, Inc. v. Catawba Dev. Corp.*, 200 N.C. App. 644, 650, 689 S.E.2d 143, 147 (2009) (quoting *B-W Acceptance Corp. v. Spencer*, 268 N.C. 2, 9, 149 S.E.2d

570, 576 (1966)). Where corporate control does not result in an underlying wrong, a veil-piercing claim may be dismissed at the Rule 12(b)(6) stage. *Best Cartage, Inc. v. Stonewall Packaging, LLC*, 219 N.C. App. 429, 440, 727 S.E.2d 291, 300–01 (2012). Plaintiffs' veil-piercing claim is apparently predicated on Plaintiffs' fraud-based claims, which the Court has dismissed. Therefore, RBH2's corporate existence does not somehow insulate the Individual Defendants from liability nor did it cause the Delucas' injury. Plaintiffs' claim for veil-piercing is therefore DISMISSED.

## VI.   CONCLUSION

{56}   For the foregoing reasons, it is ORDERED that:

1. Plaintiffs' Motion to Amend Complaint is GRANTED. The Amended Complaint is deemed filed as of the date of this Order without further service.

2. The First Motion to Dismiss is DENIED AS MOOT.

3. As to the breach of contract claim, Defendants' Second Motion to Dismiss is DENIED.

4. As to the claims for (a) violation of the Interstate Land Sales Full Disclosure Act, (b) violation of the North Carolina Unfair and Deceptive Trade Practices Act, (c) negligent misrepresentation, (d) common law fraud, and (e) unjust enrichment, Defendants' Second Motion to Dismiss is GRANTED, and those claims are hereby DISMISSED.

5. No claims remain against Defendants Howell, Kennedy, Mandrin, Stilwell, Swain, and Talbot, and they are DISMISSED from this action.

6. Plaintiffs shall, within thirty days of the issuance of this Order, file a second amended complaint, limited to the breach of contract claim, to which RBH2 shall respond within thirty days.